[No. B006108. Second Dist., Div. Three. Dec. 13, 1985.]

ERNESTINE STEWART NAPUE et al., Plaintiffs and Respondents, v. GOR-MEY WEST, INC., et al., Defendants and Appellants.

## COUNSEL

Maiden, Rosenbloom, Wintroub, Vogel & Fridkis, Alvin D. Rosenbloom, Miriam Tigerman Vogel, Elizabeth Thompson, Petillon, Murray & Dieterich and James D. Murray for Defendants and Appellants.

Voorhees, Knable & Voorhees and Sidney Knable for Plaintiffs and Respondents.

## OPINION

**GRIGNON, J.***—Defendants and appellants Gordon McGilvray, Gor-Mey West, Inc., and Zachary and Simon Le Duff, appeal from a judgment of the superior court setting aside a nonjudicial foreclosure and quieting title in plaintiffs and respondents Ernestine and Sandra Napue on condition that certain payments be made by the Napues to McGilvray and Gor-Mey West, Inc. Appellants further appeal from an "Order Modifying Judgment" extending the Napues' time to perform until after this appeal is determined. Appellants Le Duff also appeal from certain orders awarding costs and attorneys' fees. For the reasons stated below, we reverse the judgment and remand the case to the trial court for further proceedings not inconsistent with this opinion.

### STATEMENT OF FACTS

On April 2, 1975, Ronald Napue purchased a single family residence from Simon and Zachary Le Duff (Le Duffs) for $65,000. As part of the purchase

---

*Assigned by the Chairperson of the Judicial Council.

price, the Le Duffs took back a $6,500 installment note secured by a second deed of trust on the property. A first deed of trust was held by Founders Savings and Loan Association.

In September of 1975, Ronald transferred title to the property to his mother, Ernestine Napue, his sister, Sandra Napue and himself as joint tenants.

Subsequently, the Napues failed to make certain payments due on the first deed of trust and failed to pay the property taxes. The Le Duffs advanced $10,600 for mortgage payments and property taxes in order to protect their interest in the property. The Napues then also failed to make payments due on the second.

On October 22, 1979, Manhattan Escrow Co., the trustee under the second deed of trust, recorded and mailed to the Napues a notice of default and election to sell under deed of trust.

On November 30, 1979, Sandra filed a petition for bankruptcy and was discharged on May 22, 1980.

On June 10, 1980, Manhattan recorded a notice of trustee's sale setting the sale of the property for July 3, 1980. Notice of the trustee's sale was posted on June 12, 1980, and published on June 12, 19 and 26, 1980.

On June 27, 1980, Ernestine filed a petition for bankruptcy.

On July 3, 1980, the sale was postponed to August 7, 1980. On August 7, it was postponed again to September 15, 1980.

■ ■■ ■ On September 11, 1980, the bankruptcy court in Ernestine's bankruptcy case, pursuant to Ernestine's stipulation, ordered that the automatic stay of bankruptcy would be terminated for all purposes effective January 8, 1981.[1]

On September 15, 1980, the sale was postponed to January 9, 1981. In October of 1980, Ronald quitclaimed his interest in the property to his mother and sister.

On January 9, 1981, the trustee's sale was held. Gordon McGilvray and his wholly owned corporation, Gor-Mey West, Inc. (collectively Gor-Mey) were the successful bidder. Gor-Mey paid $32,238.75 in cash and assumed

---

[1]The filing of a petition in bankruptcy operates, in general, to automatically stay other proceedings against the bankrupt.

the note secured by the first trust deed with a balance of $49,263.35. Thus, the total purchase price paid by Gor-Mey for the property was $81,502.10. The unpaid debt owed to the Le Duffs was $21,951.26. A check for the difference between the bid price and the debt ($10,248.74)[2] was sent to the Napues.

Gor-Mey filed an unlawful detainer action against the Napues on March 5, 1981. On March 20, 1981, the Napues filed an answer in the unlawful detainer action and returned the surplus funds ($10,248.74) to Manhattan.

On June 8, 1981, the Napues filed the instant action against Gor-Mey, the Le Duffs and Manhattan to cancel or set aside the foreclosure sale, seeking declaratory relief, an accounting, and a judgment quieting title. On July 2, 1981, the unlawful detainer action was consolidated with the case at bench. The unlawful detainer action was placed off calendar pending the resolution of the quiet title action.

After a court trial, conditional judgment in favor of Ernestine and Sandra was signed and filed on April 20, 1982. The judgment quieted title in Sandra and Ernestine contingent on the making of certain payments to the defendants. Specifically the judgment required that: (1) the Napues open a valid escrow within 15 days from the date judgment was signed and entered (May 5, 1982); (2) the Napues pay Gor-Mey within 30 days after the opening of escrow (June 4, 1982); (3) Gor-Mey place a demand for payment in the escrow; and (4) Gor-Mey deliver a deed conveying the property. The trial court expressly retained jurisdiction to supervise the judgment.

On May 12, 1982, Gor-Mey filed a notice of appeal and on June 8, 1982, Le Duff filed a notice of appeal.

On September 16, 1982, the court modified the judgment by extending the Napues' time to perform until after this appeal is determined.

Gor-Mey and the Le Duffs appeal from the April 20, 1982, judgment and the September 16, 1982, order modifying judgment.

## CONTENTIONS

Appellants contend:

1. The trial court erred in concluding that the three-month reinstatement period mandated by Civil Code section 2924 was not properly provided to the Napues.

---

[2]These amounts do not add up. The error is not ours. It is in the trial court's statement of decision.

2. The trial court erred in determining that Gor-Mey was not a bona fide purchaser entitled to the benefit of the conclusive presumption of section 2924.

3. The trial court erred in determining that the Napues made a valid and viable tender to the Le Duffs and Gor-Mey of the amount owed which is a condition precedent to maintaining an action to cancel a sale under a deed of trust.

4. The trial court had no jurisdiction to modify the judgment once the notice of appeal had been filed, and, therefore, the order purportedly modifying the judgment was a nullity.

5. The trial court erred in failing to award attorneys' fees and costs to the Le Duffs from Ronald Napue.

6. The trial court erred in awarding costs and attorneys' fees to Ernestine and Sandra Napue against the Le Duffs.

DISCUSSION

I

*Introduction*

This case involves what is variously referred to as a private foreclosure, a nonjudicial foreclosure, an extra-judicial foreclosure, a trustee's foreclosure sale, or a sale under a deed of trust with a power of sale. This private foreclosure process is closely governed by statute in California. (See Civ. Code, § 2924 and its subparts.)

The statutory scheme provides, in general, that if a deed of trust contains a power of sale, that power cannot be exercised upon a default until certain conditions are complied with:

1. A notice of default and an election to sell the property must be recorded.

2. The debtor then has a three-month reinstatement period to pay the balance due and reinstate the terms of the loan.

3. If the loan is not reinstated within that three-month period, a notice of trustee's sale must be recorded. The notice of sale must be posted in a public

place and on the property and must also be published in an appropriate newspaper.

4. Any postponement of the sale must be announced at the time and place set for the sale.

In order to protect a purchaser of a property at a trustee's sale, Civil Code section 2924 provides that a recital in the deed executed pursuant to a power of sale that all procedural requirements have been complied with "shall constitute prima facie evidence of compliance with such requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value and without notice." ■ Thus, any failure to comply with the procedural requirements of Civil Code section 2924 will not affect the validity of a sale in favor of a bona fide purchaser.

## II

*Section 356 of the Code of Civil Procedure*
*Does Not Toll the Three-Month Reinstatement*
*Period Mandated by Section 2924 of the Civil Code*

The trial court's judgment in favor of the Napues was based on its conclusion that, as a result of the bankruptcies of Ernestine and Sandra Napue, the Napues had not been provided with the three-month reinstatement period mandated by the Civil Code. Specifically, the trial court concluded that the three-month reinstatement period was tolled pursuant to section 356 of the Code of Civil Procedure by the successive bankruptcies of the Napues. The trial court reasoned that the three-month reinstatement period which began on October 22, 1979, was tolled for the period November 30, 1979, through May 22, 1980 (Sandra's bankruptcy) and again for the period June 27, 1980, through January 8, 1981 (Ernestine's bankruptcy) and, therefore, had not expired on January 9, 1981, the date of the trustee's sale.

■ Appellants contend that the trial court erroneously applied the tolling provisions of section 356 of the Code of Civil Procedure to the three-month reinstatement period mandated by section 2924 of the Civil Code. We agree.

Section 356 is included in Part II, Title 2 of the Code of Civil Procedure which deals with statutes of limitation. Those statute of limitation provisions are generally applicable to civil actions and special proceedings of a civil nature. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 321, p. 352.)

Section 356 provides: "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the

injunction or prohibition is not part of the time limited for the commencement of the action.''

It has long been the rule in California that the statute of limitation provisions are not applicable to a power of sale under a deed of trust. The power of sale endures for as long as the underlying trust purpose survives. This is so even if the statute of limitation bars collection of the underlying obligation. (*Hohn* v. *Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605, 614 [39 Cal.Rptr. 647]; *Flack* v. *Boland* (1938) 11 Cal.2d 103 [77 P.2d 1090]; *Faxon* v. *All Persons* (1913) 166 Cal. 707 [137 P. 919].)

This is consistent with the statutory scheme set out above. The statute of limitation provisions of the Code of Civil Procedure are applicable to civil actions and special proceedings of a civil nature both of which are *judicial* remedies.[3] A trustee's sale pursuant to a power of sale under a deed of trust is not a judicial remedy. Such trustee's sale is alternately referred to as an extrajudicial or nonjudicial foreclosure. The statute of limitation provisions are, therefore, clearly inapplicable to a trustee's sale.

Moreover, even if such provisions were applicable to a trustee's sale, they would not be applicable to statutory time limits other than statutes of limitation. Statutes of limitation, which fix the time within which a suit must be commenced, are to be distinguished from other procedural statutes fixing times to do acts or seek judicial relief. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 319, p. 350.) The three-month reinstatement period mandated by Civil Code section 2924 does not fix the time within which a suit must be commenced, but rather fixes the time for curing a default in payments on a note secured by a deed of trust. The three-month reinstatement period is, therefore, not a statute of limitation.

We conclude that the statute of limitation provisions of Part II, Title 2 of the Code of Civil Procedure, including section 356, are not applicable to other statutory procedural time limits, such as Civil Code section 2924. (See, *McCarthy* v. *Lewis* (Utah 1980) 615 P.2d 1256.) Accordingly, the trial court erred in concluding that section 356 tolled the three-month reinstatement period to which the Napues were entitled.

---

[3]Section 21 of the Code of Civil Procedure divides judicial remedies into two classes: (1) actions and (2) special proceedings.

## III

### 11 U.S.C. Section 362(a) the Automatic Stay
### Provision of the Bankruptcy Code Does Not Stay
### or Toll the Three-Month Reinstatement Period
### Mandated by Section 2924 of the Civil Code

The Napues contend that notwithstanding the inapplicability of Code of Civil Procedure section 356, 11 United States Code section 362(a), imposing an automatic stay upon the filing of a petition in bankruptcy, tolls or suspends the running of the three-month reinstatement period provided for in section 2924.

There appears to be no California state law on this topic. The United States Supreme Court also has not spoken other than to deny certiorari in an Eighth Circuit case concluding that the automatic stay does *not* toll Minnesota postforeclosure redemption provisions. (*Johnson* v. *First Nat. Bank of Montevideo, Minn.* (8th Cir. 1983) 719 F.2d 270, 276, *cert. den.* (1984) 465 U.S. 1012 [79 L.Ed.2d 245, 104 S.Ct. 1015].) Moreover, the United States Bankruptcy Appellate Panel of the Ninth Circuit has expressly declined to resolve the issue. (*In re Eagles* (Bkrtcy. App. 9th Cir. 1984) 36 Bankr. 97, 98.)[4]

A number of courts have considered whether the automatic stay of 11 United States Code section 362(a) tolls the running of reinstatement or redemption periods. While some courts have answered the question in the affirmative, the majority view is that the automatic stay does not toll the running of redemption and reinstatement periods. ■ For the reasons which follow, we conclude that the better view is that the automatic stay provisions of section 362(a) do not toll or suspend the running of the reinstatement period provided for in Civil Code section 2924.[5]

11 United States Code section 362(a) provides in relevant part:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to

---

[4]*In re Thomas J. Grosso Investment, Inc.* (9th Cir. 1972) 457 F.2d 168, decided under the old Bankruptcy Act and based upon Arizona law, held that the bankruptcy court could toll the running of an Arizona six-month redemption statute in a Chapter X proceeding. Other courts have interpreted *Grosso* to mean that the bankruptcy court has the *power* to stay the running of a statutory right of redemption, but that section 362(a) does not *automatically* stay the running of the period. (See *Bank of Commonwealth* v. *Bevan* (E.D. Mich. 1981) 13 Bankr. 989, 996, fn. 14; *In re Banks* (S.D. Cal. 1975) 1 Bankr. Ct. Dec. 1145, 1146.)

[5]See, 2 Collier on Bankruptcy (15 ed. 1985) paragraph 362.04 at page 362-35.

all entities, of— [¶] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title. . . ."

The scope of section 362(a) is very broad.

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. . . . [¶] The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally." (H.R. Rep. No. 95-595, 95th Cong., 2d Sess., p. 340 (1977) 1978 U.S. Code Cong. & Admin. News, at pp. 6296-6297.)

It is clear that the automatic stay precludes the recording of a notice of default if one has not been recorded prior to the commencement of the bankruptcy proceeding. It is also clear that the automatic stay precludes the foreclosure sale even if the notice is recorded prior to the filing of the bankruptcy petition. The question remains whether the stay tolls the reinstatement period if the period begins but has not expired prior to the filing of the petition.

"Section 362(a) prohibits the 'commencement or continuation . . . of a judicial, administrative, or other proceeding,' the 'enforcement' of a judgment obtained prior to bankruptcy, or any other 'act' to obtain possession of property of the estate or to create, perfect, or enforce any lien against property of the estate." (*Johnson* v. *First Nat. Bank of Montevideo Minn.* (8th Cir. 1983), *supra,* 719 F.2d 270, 276.) The mere running of a statutory time period does not constitute "either an 'act' or 'proceeding,' or the 'enforcement' of a right, within the meaning of § 362(a)." (*Id.;* see also, *In re Pridham* (E.D.Cal. 1983) 31 Bankr. 497.) Thus, the reinstatement period in which to cure a default under a note secured by a deed of trust is not tolled by the automatic stay provisions of section 362(a).

This conclusion is also based on the presence in the Bankruptcy Code of 11 United States Code section 108(b). Section 108(b) provides that where the debtor "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act," and the period for doing so has not expired as of the filing of the petition in bankruptcy, the trustee has until the end of such period, "including any suspension of such period occurring on or after the commencement of the case; or 60 days," whichever is later, to perform that act. Thus Congress has specifically addressed, in the context of a bankruptcy proceeding, the issue of the time in which a debtor will have to cure a default.

"[W]here one section of the Bankruptcy Code explicitly governs an issue, another section should not be interpreted to cause an irreconcilable conflict. . . . [¶] An interpretation of § 362(a) as an indefinite stay of the statutory period of redemption would render § 108(b) superfluous. If § 362(a) automatically stays the running of the statutory right to redeem until the stay is lifted pursuant to § 362(c) or (d), the pertinent time allotments of § 108(b) are completely extraneous as statutory time periods designed to control the trustee's activity. Moreover, if § 362(a) is interpreted to provide for the automatic stay of time periods for an indefinite amount of time, then subsections (a) and (b) of § 108, which define minimum and maximum time periods for the trustee to act directly conflict with § 362(a)." (*Bank of Commonwealth* v. *Bevan* (E.D.Mich. 1981) 13 Bankr. 989, 994; see also, *Johnson* v. *First Nat. Bank of Montevideo, Minn., supra,* (8th Cir. 1983) 719 F.2d 270, 276; *In re Martinson* (8th Cir. 1984) 731 F.2d 543; *Matter of Markee* (Idaho 1983) 31 B.R. 429); *In re Owens,* (E.D. Mich. 1983) 27 Bankr. 946; *Matter of Construction Leasing and Investment Corp.,* 20 Bankr. 546 (M.D.Fla. 1982); *In re Murphy* (Colo. 1982) 22 Bankr. 663; *In re Ecklund & Swedlund Development Corp.* (Minn. 1981) 17 B.R. 451; *In re Hellenschmidt* (Colo. 1980) 5 Bankr. 758; 4 Collier on Bankruptcy (15th ed. 1985) par. 541.07[3] at page 541-31.)

We conclude that the three-month reinstatement period to which the Napues were entitled was not tolled by section 362(a) during the pendency of the bankruptcies.

### IV

*The Trial Court Erred in Concluding that the Napues'
Three-Month Reinstatement Period had Not Expired*

Given our conclusion that neither section 356 of the Code of Civil Procedure nor 11 United States Code section 362(a) tolls or suspends the three-month reinstatement period of section 2924 of the Civil Code, the

only extension of time potentially available to the Napues is that provided by 11 United States Code section 108(b). Under that section, if the three-month reinstatement period has not expired prior to the filing of the petition in bankruptcy, the trustee or the debtor has until the later of the expiration of the three-month period or 60 days after the petition is filed in which to cure the default.

Section 108 is not applicable to Ernestine because her reinstatement period expired prior to commencement of her bankruptcy. Applying section 108 to Sandra, her reinstatement period had not expired prior to the filing of her petition in bankruptcy, and, therefore, she had 60 days from July 17, 1980, or until September 18, 1980, within which to cure the default. The reinstatement period, including all applicable extensions having expired without the debtors having cured, the trustee's sale held on January 9, 1981, was not untimely.[6]

## CONCLUSION

Since we have concluded that the Napues three-month reinstatement period including all applicable extensions properly expired prior to the trustee's sale to Gor-Mey, the judgment must be reversed. Therefore, it is not necessary to address the other contentions raised by the appellants. However, we feel compelled to set forth certain principles for the guidance of the trial court upon remand.

The Napues original action consisted of three causes of action: (1) to quiet title; (2) for declaratory relief; and (3) for an accounting. Since the judgment quieted title in the Napues, the court dismissed the actions for declaratory relief and an accounting. The complaint alleged that the foreclosure sale should be cancelled on the grounds of lack of notice, an inadequate bid, and conspiracy between the Le Duffs and Gor-Mey defeating Gor-Mey's status as a bona fide purchaser.

Section 2924 of the Civil Code creates a conclusive presumption in favor of a bona fide purchaser at a trustee's sale that if the trustee's deed recites that all requirements of law have been complied with regarding the mailing, posting, publication, or personal delivery of the notice of default

---

[6]It is interesting to note that at the time of Ernestine's bankruptcy, Ronald was the legal owner of one-third of the property and Sandra, having been discharged in bankruptcy, owned her one-third free and clear. Thus, only one-third of the property was even potentially subject to the jurisdiction of the bankruptcy court. Moreover, since Ernestine and Sandra never assumed the obligations secured by the property and were thus not "obligors" under state law it is not clear that they were entitled to the protection of the bankruptcy court with respect to those obligations. We leave this issue for another day.

and the notice of sale, the recital is conclusive. In other words, failure to comply with the notice requirements is a ground to cancel the sale only as against a party who is not a bona fide purchaser. A sale to a bona fide purchaser is not voidable.

In its statement of decision the trial court stated:

"17. Neither of the defendants, GORDON McGILVRAY nor GOR-MEY WEST, INC., were bona fide purchasers at said Trustee's Sale, for the reason that each took with notice of the pending Bankruptcy, as a result of which each was obligated to make a reasonable inquiry and each is bound by whatever would have been disclosed by such reasonable inquiry, including, but not limited to, the tolling of said reinstatement period during the pendency of said intervening bankruptcies."

In light of our conclusions with respect to the tolling of the reinstatement period, the above factual decision is clearly erroneous. Gor-Mey's notice of the bankruptcies did not void its status as a bona fide purchaser.

On remand, the trial court must determine whether Gor-Mey was a bona fide purchaser of the property. If it concludes that Gor-Mey was a bona fide purchaser, the sale is not voidable and appellants first and second causes of action must be dismissed.

If the trial court concludes that Gor-Mey was *not* a bona fide purchaser, then the sale is voidable. However, there is still another threshold issue which must be addressed before the merits of the action to cancel the sale may be taken up. ■ "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." (*Karlsen* v. *American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 [92 Cal.Rptr. 851].) A tender of payment is of no effect if the offeror does not have the present ability to make the tender good. (*Id.,* at p. 118.)

In its statement of decision the trial court stated:

"14. By plaintiffs' offer to pay all amounts found by this Court to be due and owing in order to cure their default, they have made a tender sufficient to satisfy the requirements of the law."

We do not find this factual decision to be clearly erroneous as a matter of law. (See, *Foge* v. *Schmidt* (1951) 101 Cal.App.2d 681 [226 P.2d 73].) However, on remand we direct the trial court to consider the Napues present ability to make their tender good taking into account the additional advances

made by defendants during the pendency of this appeal and taking into account the Napues' apparent inability to obtain financing.

The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

Klein, P. J., and Lui, J., concurred.