[No. A037268. First Dist., Div. Three. June 30, 1988.]

CHARLES CAMPBELL, Plaintiff and Appellant, v.
TERESITA LAUIGAN, as Acting Tax Collector, etc., et al.,
Defendants and Respondents.

652

**COUNSEL**

Michael Goch, Michael Glenn, Robert M. Yaspan, Bruce Henderson and Yaspan & Goch for Plaintiff and Appellant.

Richard J. Moore, County Counsel, James F. May, Deputy County Counsel, John K. Van de Kamp, Attorney General, Timothy G. Laddish and Richard Finn, Deputy Attorneys General, Peter D. MacDonald, City Attorney, McKenna, Conner & Cuneo, Aaron M. Peck, Stephanie C. Tramz and Gerald R. Lampton for Defendants and Respondents.

**OPINION**

**BARRY-DEAL, J.**—By his complaint, appellant Charles Campbell sought to quiet title to certain real property which he had acquired by quitclaim deed from a trustee in a federal bankruptcy proceeding. Respondents Acting Tax Collector of Alameda County, State of California (State), and City of Pleasanton, a municipal corporation, the named defendants, demurred to the complaint on the ground that it failed to state facts sufficient to constitute any cause of action. The trial court sustained the demurrers. Appellant did not ask for, and the trial court did not grant, leave to amend. Judgment thereafter was entered dismissing the complaint with prejudice.

We affirm the judgment. When real property is sold by operation of law to the State for nonpayment of property taxes prior to the filing of a bankruptcy petition, and, after the filing, neither the debtor nor the bankruptcy trustee takes any action to redeem the property, set aside the conveyance to the State, or interfere in any way with the tax sale proceeding, a third party grantee of the property has no standing to object to the tax sale as a violation of the automatic stay.

## I. *Facts*

The following are the facts either alleged in the complaint and therefore deemed to be true for purposes of a demurrer, or subject to judicial notice pursuant to Evidence Code section 452.[1]

In June 1967, Qualified Investments, Inc. (Q.I.I.), a California corporation, acquired title to the subject real property, consisting of approximately 13.85 undeveloped acres in the City of Pleasanton. Q.I.I. thereafter became delinquent in payment of property taxes for the fiscal year 1970-1971, and on June 30, 1971, the property was sold by operation of law to the State for nonpayment of taxes. (See former Rev. & Tax. Code, § 3436.)[2] Under former sections 3511 and 3691, the sale commenced the running of a five-year period in which to exercise the right of redemption.

On July 6, 1974, Q.I.I. filed a petition for arrangement under chapter 11 of the former Bankruptcy Act in the United States Bankruptcy Court for the Central District of California. The bankruptcy court thereafter issued a "Stay of Enforcement of Lien and Other Proceedings."

On July 1, 1976, after the expiration of the five-year redemption period, no one having redeemed the property, the Alameda County Tax Collector deeded the property to the State for nonpayment of taxes. The conveyance was made without approval by the bankruptcy court. In February 1978, the State sold the property to the City of Pleasanton for the sum of $18,500 and conveyed title thereto by grant deed. The sale terminated all rights of redemption. (§ 3707.)

In October 1982, the trustee in the Q.I.I. bankruptcy proceeding conveyed by quitclaim deed his interest in the property to appellant. Appellant paid no more than $1,000 for such interest. On February 27, 1985, appellant initiated an adversary proceeding in the bankruptcy proceeding seeking to have the conveyances of the property from the Alameda County Tax Collector to the State and from the State to the City of Pleasanton declared null and void. He alleged that the conveyances were made without bankruptcy court approval and therefore were in violation of the automatic stay provisions of rule 601 of the former Rules of Bankruptcy Procedure (hereafter

---

[1] Respondent City of Pleasanton requested the trial court to take judicial notice of certain matters properly the subject of judicial notice pursuant to Evidence Code sections 452 and 453.

[2] All further statutory references are to the Revenue and Taxation Code sections in effect prior to amendment thereof in 1984. (Stats. 1984, ch. 988, §§ 1-77.

rule 601).[3] The bankruptcy judge expressed the view that appellant "was a third party, certainly not someone who is able to assert any . . . violation of the stay under . . . 601 . . . ," and that "this whole thing is not within the . . . subject matter jurisdiction of the Bankruptcy Court under the Bankruptcy Act." On July 10, 1985, the bankruptcy court entered an order dismissing the proceeding on the ground of lack of subject matter jurisdiction.

On February 5, 1986, appellant filed the complaint in the instant action in the Alameda County Superior Court. Appellant asserted the identical claim asserted in the adversary proceeding, i.e., that the conveyances of the property to the State and City of Pleasanton were made without bankruptcy court approval in violation of rule 601 and therefore were null and void. Appellant sought a determination that respondents had no claim or interest in the property adverse to appellant.

In support of their demurrers to the complaint, respondents contended, inter alia, that because appellant was neither the debtor nor the trustee of the bankrupt estate, appellant did not have standing to attack an act as a violation of rule 601. In support of this contention, respondents relied primarily upon *Beck* v. *Unruh* (1951) 37 Cal.2d 148 [231 P.2d 13]. In sustaining the demurrer, the trial court found *Beck* controlling.

## II.   *Issues and Standard of Review*

■   We may affirm the judgment of dismissal based upon the sustaining of the general demurrer if supported by any proper grounds, and not solely the grounds relied upon by the trial court. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)   ■   On appeal, respondents contend, among other things, that appellant does not have standing to attack the tax-sale conveyance on the ground that it violated the automatic stay under rule 601. We agree and limit our discussion on appeal to this ground, which we conclude supports the judgment of dismissal.

■   We note that, while a demurrer normally presumes the truth of the allegations contained in the complaint, that presumption does not apply to the extent such allegations are controverted by judicially noticed facts. "The

---

[3] The former Rules of Bankruptcy Procedure governed bankruptcy proceedings filed under the former Bankruptcy Act. The Bankruptcy Act was superseded by the Bankruptcy Reform Act of 1978, effective October 1, 1979, codified in 11 United States Code section 101 et seq. Rule 601 was superseded by the "automatic stay" provisions of 11 United States Code section 362.

Appellant alleged only a violation of the "automatic stay" provisions of rule 601 and not a violation of the stay order issued in the chapter 11 proceeding.

courts . . . will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed. [Citations.] Thus, a pleading valid on its face may nevertheless be subject to demurrer when matters judicially noticed by the court render the complaint meritless." (*Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824].)

### III. *Discussion*

The "automatic stay" provisions of rule 601,[4] superseded by the analogous provisions of 11 United States Code section 362, operated to stay enforcement of liens and other claims against a debtor upon the filing of a bankruptcy proceeding. ■ It is fundamental under federal bankruptcy law that the automatic stay operates for the benefit of the debtor and trustee only, and gives other parties interested in property affected by the automatic stay no substantive or procedural rights. (See *In re Brooks* (Bankr. 9th Cir. 1987) 79 Bankr. 479, 481-482; *In re Eagles* (Bankr. 9th Cir. 1984) 36 Bankr. 97, 98; *In re Silverman* (Bankr. S.D.N.Y. 1984) 42 Bankr. 509, 517.) If the debtor or trustee chooses not to invoke the protections of the automatic stay, no other party may attack any act in violation of the automatic stay. (*In re Brooks, supra,* at p. 481.)

In *Brooks,* in 1984 a bank made a loan to Mr. and Mrs. Brooks secured by a recorded deed of trust encumbering their property. Thereafter, the bank realized that a mistake had been made regarding the legal description in the deed of trust. The bank corrected the mistake and rerecorded the deed of trust on June 5, 1985. Unknown to the bank, on June 3, 1985, Mr. Brooks had filed for bankruptcy, thereby invoking the automatic stay. The trustee in bankruptcy did not object to the rerecording, and the bankruptcy court entered a discharge. Thereafter, Mrs. Brooks filed for bankruptcy, and the trustee in her proceeding attacked the rerecordation by the bank as a violation of the automatic stay under 11 United States Code section 362. The bankruptcy court agreed.

On appeal, the bankruptcy appellate panel of the Ninth Circuit reversed. The court held that a trustee has the option to avoid a transfer in violation of the automatic stay under 11 United States Code section 362, but that such transfers are not absolutely void. Because neither the debtor nor the

---

[4] Rule 601(a) provided: "Stay Against Lien Enforcement. The filing of a petition shall operate as a stay of any act or the commencement or continuation of any court proceeding to enforce (1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings."

trustee in Mr. Brooks's bankruptcy had challenged the transfer, other parties could not attack the transfer on the grounds of violation of the automatic stay. (*In re Brooks, supra,* 79 Bankr. at p. 481.)

Although not involving the specific issue of the standing of a third party to assert a claim of an automatic stay violation, *Beck* v. *Unruh, supra,* 37 Cal.2d 148, is consistent with *Brooks* and the other above-cited federal authorities. In *Beck,* the California Supreme Court held that in the absence of any intervention or redemption by a bankruptcy trustee in a tax sale proceeding affecting property of the debtor, a grantee of the property could not challenge a prior conveyance made pursuant to the tax sale on the grounds the conveyance was made without bankruptcy court approval. (*Beck, supra,* at p. 153.) In *Beck,* at the time the debtor filed for bankruptcy in November 1927, its listed assets included real property previously sold to the State in June 1927 for nonpayment of taxes. Five years later, in 1932, the trustee not having exercised its right of redemption, the property was deeded to the State. In 1936, the bankruptcy proceeding was terminated without further disposition of the property. In 1944, the State sold the property to a third party who ultimately conveyed it to defendant Unruh. In 1947, the bankruptcy trustee reopened the bankruptcy proceeding and conveyed the property to Beck. Beck then filed an action to quiet title, alleging that the State had had no power to sell the property which had been in the custody of the bankruptcy court, and that the defendant's title therefore was void.

The trial court concluded that when the tax sale occurred, the property had been in the custody of the bankruptcy court, the State therefore had had no power to sell the property, and the defendant's title was void.

The California Supreme Court reversed. The court first recognized the rule that real property in the possession of the bankruptcy court generally may not be sold by the lienor under a power of sale to satisfy the lien without permission of the bankruptcy court, and that this rule has been applied to invalidate a sale by the State to a purchaser at a tax sale. (*Beck* v. *Unruh, supra,* 37 Cal.2d at p. 151.) The court further noted, however, that while "the bankruptcy court has exclusive administration of the bankrupt's assets, . . . tax liens are preserved. And in the cases brought to our attention, or discovered through independent research, *the courts were concerned with the actual invoked powers of the trustee and of the bankruptcy court then actively administering the bankrupt's estate. In the present case the trustee in bankruptcy is not seeking to set aside the tax sale, to discharge the lien, or to sell the property subject to the lien.*" (*Id.,* at p. 152, italics added.) The court pointed out that in its case, the tax sale occurred after the trustee had been discharged and the bankruptcy proceeding terminated. "The only

reasonable conclusion is that the trustee abandoned the real property to the state . . . ." (*Id.,* at p. 153.) Thereafter, when the trustee reopened the bankruptcy proceeding and purported to exercise his powers of administration by selling the property to Beck, without first invoking the control of the bankruptcy court to set aside the deed to the State, he left the parties to litigate the controversy as to title in the State court. (*Ibid.*)

The court concluded: "In view of the termination of the bankruptcy proceeding long prior to the time of the tax sale and in the absence of any intervention in the tax sale proceeding by the trustee or the bankruptcy court, it cannot be said on the record before us that the state was without power to resort to the only means at its disposal to return the property to the tax rolls. . . . [*T*]*he plaintiff is not in a position to complain of the flaunting of the claimed authority of the bankruptcy court which that court did not choose to exercise, or of invasions into the field of alleged exclusive control as to property which it in effect had abandoned.*" (*Beck* v. *Unruh, supra,* 37 Cal.2d at p. 153, italics added.) The court accordingly ruled that the deed from the State had conveyed the title to the purchaser at the tax sale. (*Id.,* at p. 154.)

In the instant case, as in *Beck,* the property had been sold to the State for nonpayment of taxes prior to the filing of the bankruptcy proceeding. Accordingly, the trustee acquired title subject to the tax lien created by the sale with the right of redemption. The automatic stay did not toll the running of the redemption period. (See *Town of Agawam* v. *Connors* (1st Cir. 1947) 159 F.2d 360, 364; *In re Minnesota Urban Developers, Inc.* (Bankr. D. Minn. 1980) 17 Bankr. 443, 446-447; see also *Napue* v. *Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 617-618 [220 Cal.Rptr. 799] ["The mere running of a statutory time period does not constitute 'either an "act" or "proceeding," or the "enforcement" of a right, within the meaning of § 362(a).' [Citations.]"].) At no time did the trustee seek to interfere with the tax sale proceeding. He took no action to set aside the sale or redeem the property during the five-year redemption period. Nor did he seek to set aside the conveyance of the property to the State upon the expiration of the five-year period or the subsequent sale to the City of Pleasanton which terminated all redemption rights. When the trustee conveyed by quitclaim deed his purported interest in the property to appellant, he did so, as in *Beck,* without first seeking to invoke the power of the bankruptcy court to set aside the conveyance to the State or the sale to the City of Pleasanton. As in *Beck,* the only reasonable conclusion to be drawn from the noninterference of the trustee and the bankruptcy court—indeed, here the bankruptcy court expressly refused to assert jurisdiction over the controversy—is that the property was abandoned to the State.

As acknowledged by the court in *Beck,* a trustee is not absolved of obligations incident to liens encumbering the estate's property (*Beck* v. *Unruh, supra,* 37 Cal.2d at p. 151), and when the trustee refuses to interfere with a tax sale proceeding, the State must be able "to resort to the only means at its disposal to return the property to the tax rolls." (*Id.,* at p. 153.)

Appellant points out, and we acknowledge, that in *Beck,* unlike the case here, the sale by the State to the third party purchaser occurred after the termination of the bankruptcy proceeding, and not during the active administration of the estate. We do not find this factor to be critical. In both *Beck* and the instant case, the conveyance of title to the State after the expiration of the five-year period, which operated to divest the trustee of title, and which was made without interference by the trustee, occurred during the course of the bankruptcy proceeding.

Appellant further contends that *Beck* is not controlling because *Beck* antedated the creation of the "automatic stay" of rule 601. He argues that prior to rule 601 any transfer made without bankruptcy court approval was "voidable" and not "void," whereas under rule 601 any transfer in violation thereof was void and therefore had no effect.

We find that regardless of the distinction between "void" and "voidable" made by the federal courts, under *Beck,* when, as here, the trustee takes no action whatsoever to discharge the tax lien, redeem the property, or set aside the conveyance to the State or subsequent sale, and the debtor does not challenge the tax sale, a third party grantee has no authority to attack the conveyance or sale as null and void on the grounds they were not preceded by bankruptcy court approval.[5]

■ Appellant's argument that the trustee perhaps was not aware of the tax sale proceeding, and that he (appellant) should not be made to suffer unfairly as a bona fide purchaser for value, is not well taken. First, the trustee's personal knowledge of the tax sale proceeding is irrelevant. A trustee must still check the public records and be aware of encumbrances as would any purchaser. (*In re Brooks, supra,* 79 Bankr. at p. 481.) Further, appellant acquired his purported interest in the property by a quitclaim deed for no more than $1,000. ■ A quitclaim deed contains no representations as to title, and transfers only the interest of the transferor in the property. (See 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Proper-

---

[5] For this reason, we need not determine the specific issue of whether the conveyance to the State without bankruptcy court approval constituted a violation of the automatic stay under rule 601 and federal bankruptcy law. Respondents contend that the conveyance following the expiration of the five-year redemption period constituted a "ministerial act" which did not violate the automatic stay, but cite no authority which directly supports this proposition.

ty, § 135, pp. 350-351.) ▪▪▪ For these reasons, we find our holding results in no injustice to appellant.

## IV. *Disposition*

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.