Filed 7/16/15  DeCaprio v. Rockridge Properties CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEVEN DECAPRIO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ROCKRIDGE PROPERTIES, LLC,<br><br>        Defendant and Respondent. | A143018<br><br>(Alameda County<br>Super. Ct. No. RG12656788) |

Three individuals filed a lawsuit claiming a right to possess real property that Rockridge Properties, LLC. (Rockridge) had purchased.  Rockridge filed a cross-complaint and moved for summary judgment.  The trial court granted summary judgment, finding that Rockridge was entitled to possession and that it held free and clear title to the property.  Subsequently, Steven DeCaprio filed a motion to vacate the order granting summary judgment and claimed a right to possession of the property.  The trial court held a hearing on his motions.  It rejected DeCaprio's claims and stated he had failed to submit any evidence to support his claim of ownership of the property. DeCaprio, in propria persona, appeals and contends, among other things, that his procedural due process rights were violated and that the sale to Rockridge was not valid. We are not persuaded by DeCaprio's arguments and affirm.

## BACKGROUND

This appeal concerns the ownership of real property that is two parcels commonly referred to as 3801 and 3807 Martin Luther King, Jr. Way, in Oakland, California (the

1

property).[1]  On October 27, 2006, Peter P. Consos, Jr., as a single man, transferred title to the property to Grove Park LLC (Grove Park), a California limited liability company, by grant deed.  The grant deed transferring title was recorded in Alameda County on November 1, 2006.

On November 1, 2006, the Redevelopment Agency of the City of Oakland (redevelopment agency), as lender and beneficiary, recorded a deed of trust, assignment of rents, and security agreement (the redevelopment agency deed of trust) encumbering the property.  The redevelopment agency deed of trust was executed to secure a loan of $800,000 made by the redevelopment agency to Grove Park for development of the property.  The redevelopment agency deed of trust contained a power of sale of all of Grove Park's interest in the property.

On this same date, November 1, 2006, U.S. Bank National Association (U.S. Bank) recorded a deed of trust, assignment of rents, and security agreement (U.S. Bank deed) in Alameda County.  The U.S. Bank deed of trust was executed to secure a $741,000 loan that U.S. Bank made to Grove Park.  The U.S. Bank deed of trust also contained a power of sale and right of entry and possession of all of Grove Park's rights, title, and interests in the property.  The loan from U.S. Bank was guaranteed by A.F. Evans Company, Inc. (A.F. Evans).  A.F. Evans filed a petition for bankruptcy in March 2009.[2]

On September 22, 2011, S.B.S. Trust Deed Network (S.B.S. Trust), agent for U.S. Bank, recorded a notice of default and election to sell under the U.S. Bank deed of trust.  On January 31, 2012, S.B.S. Trust recorded a notice of trustee's sale.  Subsequently, S.B.S. Trust sold the property at a trustee's sale to Acquired Capital I, L.P. (Acquired Capital), and this deed of sale was recorded in Alameda County on March 1, 2012 (trustee's deed upon sale).  The trustee's deed upon sale contained a recital that the trustee complied with all applicable statutory requirements and that Acquired Capital paid $90,000 for the property.

---

[1]  The property is sometimes referred to as 652-654-656 W. MacArthur Boulevard.
[2]  A.V. Evans's petition for bankruptcy was dismissed in May 2012.

On June 22, 2012, Rockridge purchased the property from Acquired Capital for $265,000 (Rockridge grant deed); North American Title Company, Inc. (North American Title) was the escrow holder for this sale. North American Title recorded the Rockridge grant deed on June 22, 2012.[3]

Before the property could be sold by Acquired Capital, delinquent property taxes assessments, redemption penalties, and other delinquency penalties had to be paid. In compliance with the parties' escrow instructions, at the closing of the sale, North American Title paid to Alameda County $74,044.46 and $22,058.20 for all the delinquent property taxes, penalties, and assessments. These payments were made from the seller's proceeds of the sale.

On November 19, 2012, Paul Robert Woods, Kevin P. Carey, and Nicholas McClung, each in propria persona, filed a complaint with eight causes of action against S.B.S. Trust, U.S. Bank, Grove Park, and Rockridge. Woods, Carey, and McClung claimed an interest in the property. The only claims against Rockridge were the fifth cause of action for unjust enrichment and the eighth cause of action for quiet title.

Counsel for Rockridge hired a licensed process server, Margie Raetz-Bailey, to serve papers on Woods, Carey, and McClung to help determine who was in possession of the property and who was claiming a current ownership interest in the property. Bailey told counsel she spoke with McClung. She said McClung was evasive but accepted papers for the other persons claiming an interest in the property.

On November 6, 2013, Rockridge filed a verified cross-complaint for ejectment, declaratory relief, and quiet title against Woods, Carey, and McClung. Rockridge also named as cross-defendants "[a]ll persons unknown, claiming any legal or equitable right,

---

[3] On this same date, Arlington Investment Company, as trustee, recorded a deed of trust with assignment of rents in Alameda County (Rockridge deed of trust). The Rockridge deed of trust was executed in order to secure a $132,500 debt of Rockridge to Arlington Investment Company, a limited partnership KEOGH Plan. According to Consos, the managing member of Rockridge, Rockridge did not transfer or further encumber its interest in the property after June 22, 2012.

title, estate, lien, or interest in the property described in the cross-complaint adverse to cross-complainant's title, or any cloud on cross-complainant's title thereto."

Rockridge filed on November 13, 2013, an application for an order for publication of summons pursuant to Code of Civil Procedure section 415.50.[4] Counsel for Rockridge stated that he was unable to locate unknown Roe cross-defendants.

On January 31, 2014, Rockridge filed a motion for summary judgment on its cross-complaint and on the unjust enrichment and quiet title causes of action in the complaint. The trial court granted Rockridge's summary judgment motion and entered judgment on May 21, 2014. The court ruled that Rockridge "holds title free and clear to any adverse claim by any other person or entity to" the property. It also ruled that Rockridge was entitled to possession of the property from Woods, Carey, McClung, "and all other occupants of the premises, including any tenants, subtenants, if any, named claimants, if any, and any other occupants at the premises."

On July 10, 2014, DeCaprio, in propria persona, filed a claim of right to possession of the property.[5] He wrote that he currently resided on 37th Street in Oakland, had an ownership interest in the property, and was not alleging a landlord/tenant relationship. He also filed a motion to set aside the judgment on Rockridge's cross-complaint against Woods, Carey, and McClung. He declared that Rockridge did not serve him with its cross-complaint despite knowing about him. He asserted that he was an occupant of the property. He provided documents showing that in July 2012, Rockridge had filed a forcible detainer complaint and a right to possession of the property in *Rockridge v. Carey,* Alameda County Superior Court, No. RG12638555, and he had appeared in that action.[6]

---

[4] All further unspecified code sections refer to the Code of Civil Procedure.

[5] DeCaprio labeled his motion as a "claim of right to possession, motion to quash, motion to vacate/set aside, motion to strike, and sanctions." The trial court treated this motion as a third party claimant's right of possession.

[6] Rockridge filed a complaint on July 11, 2012, seeking possession of the property. On July 30, 2012, a default was taken in *Rockridge v. Carey*. The trial court entered judgment in favor of Rockridge and granted Rockridge possession of the

4

The trial court held a hearing on DeCaprio's motions and filed its order denying them on August 20, 2014. The court explained: "A hearing was conducted [pursuant to section] 1174.3 and third party claimant's claim of possession. Third party claimant was requested to submit evidence as to his claim of right of possession or ownership regarding the real property the subject of this action. No evidence as to right of possession or ownership was produced whether lease; indicia of title or proof in support of a claim of adverse possession. In point of fact, no evidence was produced, whatsoever, supporting a finding granting a 'right to possession.' Under these circumstances, the court determines that the subject claim is invalid."

DeCaprio filed a timely notice of appeal. After the parties filed their appellate briefs, DeCaprio filed a motion to augment the record, which this court granted. The augmented record was filed on April 13, 2015.

## DISCUSSION

### I. *Standard of Review*

Under section 1174.3, the court determines whether the claim of possession is valid based on the evidence presented. We review any finding of fact under the substantial evidence standard of review. In applying the substantial evidence test, " ' "the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." ' " (*Franck v. Polaris E-Z Go Div. of Textron, Inc.* (1984) 157 Cal.App.3d 1107, 1114.) While applying the substantial evidence standard of review to the court's factual findings, we independently review its findings on legal issues. (*Stryker v. Antelope Valley Community College Dist.* (2002) 100 Cal.App.4th 324, 329.)

To the extent that DeCaprio is contending that the trial court erred in refusing to vacate its earlier order granting summary judgment in favor of Rockridge, the standard of review is abuse of discretion. "[A] motion in the trial court to set aside a judgment is

property. Subsequently, the court ruled that Rockridge could not remove DeCaprio and others of possession of the property by a forcible detainer action. The court dismissed the forcible detainer action on March 14, 2013.

5

addressed to its sound discretion and will not be reversed without a clear showing of abuse of that discretion. [Citations.] . . . [A]ny factual conflicts in the evidence, whether presented by live testimony or by affidavit, must be resolved in favor of the prevailing party below. [Citation.]" (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1077.)

## II. *Substantial Evidence Supports the Trial Court's Denial of DeCaprio's Claim Under Section 1174.3*

Under section 1174.3, an occupant not named in the judgment of possession, who occupied the premises on the date the action was filed, may object to enforcement of the judgment by filing a claim of right to possession up to the point of eviction. In his petition, DeCaprio stated that he resided at a different address; he declared that he had an ownership interest in the property and was not alleging a landlord/tenant relationship.

In the trial court, DeCaprio presented no evidence that he owned the property or had any right to possession. DeCaprio argues that Rockridge failed to establish title, but the record contradicts that assertion. Rockridge submitted the recorded Rockridge grant deed showing that it has clear title to the property.[7] Rockridge also presented evidence that it has not transferred or further encumbered its interest in the property.

DeCaprio also did not prove adverse possession of the property. The elements necessary to establish title by adverse possession are: (1) tax payments and (2) actual possession that is (3) open and notorious, (4) continuous and uninterrupted for five years, (5) hostile and adverse to the true owner's title, and (6) under either color of title or claim of right. The party asserting title by adverse possession has the burden of proving affirmatively each one of these elements. (*West v. Evans* (1946) 29 Cal.2d 414, 417.) DeCaprio submitted no evidence to support any of these elements and Rockridge provided documents showing that North American Title paid the delinquent taxes owed

---

[7] In his reply brief, DeCaprio argues that there were competing claims for the property and he cites the homestead declarations submitted by Woods and Carey in support of their lawsuit against Rockridge. This evidence does not show that DeCaprio had any possessory or ownership interest in the property, which was the sole issue before the trial court when deciding his motion under section 1174.3.

6

to Alameda County from the proceeds Rockridge paid to Acquired Capital when purchasing the property. This uncontradicted evidence showed that DeCaprio did not pay the outstanding taxes; thus, he cannot satisfy the first element necessary to establish adverse possession.

Accordingly, the trial court properly denied DeCaprio's claim under section 1174.3.

### III. *No Abuse of Discretion in Denying Motion to Vacate the Judgment*

Preliminarily, we note that Rockridge contends that we should affirm based on DeCaprio's failure to provide an adequate record. DeCaprio did not include in the record Rockridge's summary judgment motion papers or its evidence in support of its motion. (See, e.g., *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [" 'if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed' "].)

DeCaprio asked this court to augment the record with the documents related to the summary judgment motion, which we granted. This augmented record was filed after the parties had filed their appellate briefs, and neither requested to file a supplemental brief to cite to this record. We, however, will consider the merits of DeCaprio's arguments because Rockridge provided the relevant documents and both parties had an opportunity to cite to these documents.

DeCaprio argues that the trustee's sale was conducted after A.F. Evans filed a petition under chapter 11 of the Bankruptcy Code. He maintains that the trial court's grant of summary judgment was void because it violated the automatic stay on judicial proceedings triggered by A.F. Evans's bankruptcy. (See 11 U.S.C. § 362(a).)

We need not consider whether the bankruptcy court had exclusive jurisdiction because the bankruptcy case was dismissed on May 16, 2012, and Woods, Carey, and McClung filed this lawsuit on November 19, 2012. More importantly, DeCaprio does not have standing to allege the sale of the property or court orders related to the property were in violation of an automatic stay. The only parties that have standing to allege a violation of the automatic stay are the debtor and the bankruptcy estate, represented by its

trustee. (See *Starpoint Properties, LLC v. Namvar* (2011) 201 Cal.App.4th 1101, 1109-1110; *Shorr v. Kind* (1991) 1 Cal.App.4th 249, 254, 258; *Campbell v. Lauigan* (1988) 202 Cal.App.3d 651, 656-659.) DeCaprio neither alleges nor provides any evidence that he was a beneficiary of the stay order.

DeCaprio makes various claims that Rockridge intentionally excluded him and made false statements in its application to serve pursuant to section 415.50. He maintains that his procedural due process rights were violated because Rockridge failed to serve the summons and cross-complaint on him. He points out that the trial court granted him full party status in an earlier, different action, *Rockridge v. Carey.* He contends that this earlier order determined that he was an occupant of the property and has res judicata effect on this current action.

A prior judgment is not res judicata on a subsequent action unless three elements are satisfied: "1) the issues decided in the prior adjudication are identical with those presented in the later action; 2) there was a final judgment on the merits in the prior action; and 3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication. [Citation.] Even if these threshold requirements are established, res judicata will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065.)

In the earlier action, *Rockridge v. Carey,* the trial court did grant DeCaprio full party status. However, that ruling did not compel the court in the present case to find that he has full party status. In *Carey,* the court set aside the entry of default in favor of Rockridge and dismissed Rockridge's forcible detainer action. The court found that DeCaprio had asserted a claim to possession and ownership of the property that was "as *yet unresolved . . . .*" (Italics added.) The court found that DeCaprio had a valid *claim* of possession such that he should have been included as a party in the forcible detainer action. The present action is not a forcible detainer action and the notice requirements in the present case are not identical to those in *Carey.* The court's ruling in *Carey* did not make any final determination on the merits of DeCaprio's claim that he had possessory or

8

ownership interest in the property and does not have any res judicata effect on the present action.

Even if Rockridge should have served DeCaprio with the summons and cross-complaint, its failure to do so did not violate DeCaprio's procedural due process rights. "The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner." (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1072.) Here, the trial court held a hearing on DeCaprio's claims and provided him with a full and fair opportunity to submit evidence as to his claim of ownership of the property. DeCaprio had the opportunity "to be heard at a meaningful time and in a meaningful manner." (*Id.* at p. 1072.) DeCaprio complains that he was denied a real opportunity to be heard because the trial court refused to grant him party status and he had no opportunity to conduct discovery. This argument is not persuasive. The trial court clearly provided him with an opportunity to submit the necessary evidence, and he made no showing that he needed to be able to conduct discovery in order to prove he owned the property.

Finally, even if DeCaprio's claims of error had some merit, none of these alleged errors constitute reversible error.[8] A judgment may be set aside if, after an examination of the whole record, the court is convinced that an error has resulted in a miscarriage of justice, was prejudicial, and that a different result would be probable if no error had occurred. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802.) DeCaprio cannot establish these elements. As noted above, he submitted no evidence that he had a valid claim of right to possession of the property and he has not demonstrated that a different result would have been probable had the alleged errors not occurred.

DeCaprio has not established that the trial court abused its discretion in refusing to vacate its order granting summary judgment to Rockridge.

---

[8] DeCaprio also asserts that Rockridge failed to submit evidence of trespass in support of its summary judgment motion. This argument does not warrant any discussion because Rockridge did not set forth a cause of action for trespass in its cross-complaint.

9

**DISPOSITION**

The trial court's order denying DeCaprio's motions for claim of right to possession of the property and denying his motion to vacate the summary judgment order is affirmed.  DeCaprio is to pay the costs of appeal.


_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Miller, J.