Filed 2/11/14  Smith v. Bank of America CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES SMITH, et al.<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>BANK OF AMERICA, N.A., et al.<br><br>    Defendants and Respondents.<br><br>------<br><br>CHARLES SMITH, et al.<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>DVP, LP,<br><br>    Defendant and Respondent. | F066194 & F066470<br><br>(Super. Ct. No. 10CECG04464)<br><br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Judge.

Charles Smith and Deborah M. Smith, in pro. per., for Plaintiffs and Appellants.

McCarthy & Holthus, Melissa Robbins Coutts and Matthew B. Learned for Defendants and Respondents Bank of America, N.A., and Quality Loan Service Corporation.

Williams, Jordan, Brodersen & Pritchett and Steven R. Williams for Defendant and Respondent DVP, LP.

-ooOoo-

Plaintiffs Charles Smith and Deborah M. Smith (the Smiths) obtained a home loan from defendant Bank of America, N.A. (B of A) in the amount of $348,000. The loan was secured by a deed of trust in favor of B of A against the Smiths' real property on Megan Avenue in Clovis, California (the property). When the Smiths defaulted on their loan obligations, defendant Quality Loan Service Corporation (Quality), as agent for the beneficiary of the deed of trust, initiated nonjudicial foreclosure proceedings. The Smiths then filed the present lawsuit against B of A and Quality (together defendants), asserting damage claims against defendants under several theories and also seeking to prevent the foreclosure. The trustee's sale went forward and the property was sold to a third party (DVP, LP (DVP)), thereby foreclosing the Smiths' ownership interest.[1] As to the proceedings in the trial court concerning the Smiths' lawsuit, the trial court granted defendants' motion to have their default set aside under Code of Civil Procedure[2] section 473 and also sustained defendants' demurrers to the Smiths' original complaint, first amended complaint and second amended complaint. After the demurrer was sustained to the second amended complaint, further leave to amend was denied. The Smiths appealed (in case No. F066194), contending that the trial court erred in setting aside defendants' defaults and in sustaining the demurrers to the Smiths' causes of action without leave to amend. We disagree and affirm the orders and judgment of the trial court.

Additionally, the Smiths separately appealed (in case No. F066470) from the trial court's postjudgment order granting DVP's motion to expunge the lis pendens.[3] Since

---

[1] DVP intervened in this action to file a motion to expunge the lis pendens recorded against the property by the Smiths.

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[3] For purposes of this opinion, we ordered case Nos. F066194 and F066470 consolidated under case No. F066194 on December 2, 2013.

the Smiths failed to state a viable real property claim, we affirm the trial court's order expunging the lis pendens.

**FACTS AND PROCEDURAL HISTORY**

Events Leading to Foreclosure

On February 8, 2008, as part of a loan refinance transaction, Charles Smith executed a promissory note in the amount of $348,000, promising to repay that sum plus interest to B of A in regular monthly installments. The promissory note was secured by a deed of trust against the property. The deed of trust named B of A as the beneficiary, was signed by the Smiths (as the borrowers/property owners), and was recorded by the Fresno County Recorder as document No. 2008-0028738. Said deed of trust was in the first position; that is, it was the senior deed of trust or mortgage on the property. Unless otherwise indicated, when we refer herein to the deed of trust, we mean the above described first deed of trust which secured the loan to the Smiths of $348,000.

On the same date, Charles Smith also executed a second promissory note, promising to repay another loan obtained from B of A in the amount of $43,500, which obligation was secured by a second deed of trust executed by the Smiths.

On February 17, 2010, after the Smiths were substantially in arrears on their loan obligations, Quality recorded a notice of default and election to sell under deed of trust (notice of default).[4] The notice of default stated that, in regard to the deed of trust recorded as document No. 2008-0028738, which secured the loan of $348,000 from B of A, the Smiths were in default in the amount of "$17,013.50 as of 2/17/2010." The notice of default also gave the appropriate warnings of the consequences in the event the Smiths failed to take action.

---

**4** The notice of default reflects that Quality took this action as agent for the beneficiary under the deed of trust.

On May 4, 2010, B of A substituted Quality as trustee in place of the former trustee under the deed of trust. Since the Smiths had failed to take any steps to cure the default, Quality recorded a notice of trustee's sale on May 19, 2010. On June 9, 2011, the property was sold to a third party, DVP, at a public foreclosure auction commonly referred to as a trustee's sale. A trustee's deed upon sale was subsequently recorded on June 21, 2011.

The Original Complaint

On December 27, 2010, the Smiths filed their original complaint in the trial court. The complaint purported to state the following causes of action: (1) fraud, (2) rescission and damages pursuant to section 1635 of title 15 of the United States Code, (3) damages pursuant to section 2605 of title 12 of the United States Code, (4) damages pursuant to section 1692 of title 15 of the United States Code, (5) infliction of emotional distress, (6) damages pursuant to section 241 of title 18 of the United States Code, (7) unfair business practices, (8) quiet title, (9) temporary restraining order and preliminary injunction, and (10) damages for violation of section 2071 of title 18 of the United States Code. As this enumeration makes clear, most of the causes of action were premised upon alleged violations of federal law.

Removal to Federal Court and the Smiths' Dismissal of Federal Claims

In January 2011, B of A removed the case to the United States District Court for the Eastern District of California. In April 2011, the Smiths voluntarily dismissed all of their federal claims (the 2d, 3d, 4th, 6th and 10th causes of action), whereupon the federal district court remanded the case back to Fresno Superior Court to resolve the state law claims.

Remand to the Superior Court and Section 473 Motion

Once the case returned to Fresno Superior Court, defendants filed a demurrer to the Smiths' complaint on May 20, 2011. However, the trial court granted a motion to strike the demurrer due to the fact that defendants' default had been entered the day

4.

before, on May 19, 2011. On June 14, 2011, defendants filed a motion to set aside default on the ground that their default was a result of attorney neglect due to an internal clerical error. On July 12, 2011, the trial court found defendants' showing was sufficient to warrant relief and it set aside defendants' default under section 473.

Demurrer to Complaint

With their default set aside, defendants proceeded to re-file their demurrer to the Smiths' complaint. The Smiths filed opposition to the demurrer. The matter was heard on October 27, 2011. The trial court struck the second, third, fourth, sixth and tenth causes of action, since the Smiths previously dismissed those claims in the federal district court. As to the remaining causes of action, the trial court sustained defendants' demurrer as to all causes of action except the eighth and ninth, and it granted the Smiths 30 days' leave to amend.

Demurrer to First Amended Complaint

A first amended complaint was filed by the Smiths on November 28, 2011. In it, the Smiths attempted to state the following causes of action: (1) fraud, (2) infliction of emotional distress, (3) unfair business practices, (4) quiet title, and (5) temporary restraining order and injunctive relief. The first amended complaint alleged, among other things, that the Smiths were damaged due to loan origination errors, nondisclosures and failures to respond to the Smiths' inquiries. The prayer for relief requested (in addition to damages) that the deed of trust and all proceedings taken pursuant thereto be voided by the trial court and that title to the property be quieted in favor of the Smiths.

On December 27, 2011, defendants filed their demurrer to the first amended complaint. The grounds raised by defendants included that the Smiths' pleading (1) failed to state a cause of action to quiet title because they had not tendered or offered to tender the balance due on the loan and (2) failed to state a cause of action for a temporary restraining order or other injunctive relief because they no longer owned the property and, thus, the prevention of foreclosure was moot. The Smiths filed opposition

5.

to the demurrer. At the hearing on April 12, 2012, the trial court agreed with defendants' arguments that the first amended complaint failed to state any cause of action against defendants. The trial court sustained the demurrer to the quiet title and injunctive relief causes of action without leave to amend, and it sustained the demurrer to the remaining causes of action with 20 days' leave to amend.

Demurrer to Second Amended Complaint

On May 2, 2012, the Smiths filed their second amended complaint alleging that defendants were liable for (1) fraud, (2) infliction of emotional distress, and (3) unfair business practices. One remarkable new theory alleged in the second amended complaint was that the Smiths were never loaned any money by B of A, but rather B of A issued the loans to certain artificial, fictitious entities whose trade names were spelled in all capital letters (i.e., CHARLES SMITH and DEBORAH M. SMITH), as opposed to the real, living, breathing human beings whose names had to include both upper case and lower case lettering (i.e., Charles Smith and Deborah M. Smith). Defendants demurred to the second amended complaint, asserting that the Smiths still failed to state any cause of action and that many of the claims asserted by the Smiths had already been rejected by the trial court. The Smiths filed opposition to the demurrer.

On October 1, 2012, following oral argument, the trial court sustained defendants' demurrer to the second amended complaint. Additionally, the trial court concluded that further amendment could not cure the fatal defects in the pleading and, therefore, leave to amend was denied. The Smiths timely filed their notice of appeal in case No. F066194 on October 16, 2012, checking the box on the notice of appeal form to indicate that the appeal was taken from the "[j]udgment of dismissal after an order sustaining a demurrer."[5] In their appeal therefrom, the Smiths contend the trial court erred in setting

---

[5]     Although the trial court neglected to enter a formal judgment of dismissal after it sustained defendants' demurrer to the second amended complaint without leave to amend, it is clear the trial court intended to do so. Not only was leave to amend denied,

6.

aside defendants' default and in sustaining the demurrers to the Smiths' causes of action without leave to amend.

<u>Order Expunging Lis Pendens</u>

Nearly two months after the trial court sustained the demurrer to the second amended complaint without leave to amend, the trial court heard DVP's motion to expunge the notice of pendency of action (lis pendens) recorded on the property by the Smiths. The trial court granted the motion, noting that the demurrer ruling established the Smiths could not plead any cause of action, much less a real property claim. The trial court also ordered the Smiths to pay the attorney fees incurred by DVP in seeking to remove the lis pendens, in the sum of $1,625. In case No. F066470, the Smiths separately appealed from the order granting the motion to expunge the lis pendens. As noted above, we have ordered both appeals (case Nos. F066194 and F066470) consolidated for purposes of this opinion.

## **DISCUSSION**

### **I.      The Trial Court Properly Set Aside Default**

The Smiths argue the trial court abused its discretion in setting aside defendants' default. We disagree.

####           A.      <u>Section 473 and Standard of Review</u>

A motion for relief from a judgment, order or other proceeding may be made on the ground that it was taken against the moving party as a result of mistake, inadvertence, surprise or excusable neglect. (§ 473, subd. (b).) Whether to grant such relief under

---

but the trial court directed defendants to submit an ex parte request for dismissal within seven days. Further, the register of action reflects that the court subsequently dismissed defendants. Under the circumstances, we exercise our discretion to deem that the order sustaining the demurrer without leave to amend is modified to include a formal judgment of dismissal. (*Estate of Dito* (2011) 198 Cal.App.4th 791, 799-800.) We treat the appeal as from the judgment. Therefore, we reject defendants' argument that the appeal is from nonappealable orders.

section 473 lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 (*Elston*).) Section 473 is applied liberally where the party moves promptly to seek relief and no prejudice will be suffered by the party opposing the motion if relief is granted. In such instances, only very slight evidence is needed to justify relief. (*Elston*, *supra*, at p. 233; *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 819-820.) Additionally, because the law favors trial on the merits, doubts are to be resolved in favor of the party seeking relief. As a result, a trial court order denying relief is more closely scrutinized on appeal than an order permitting trial on the merits. (*Elston*, *supra*, at p. 233.)

In addition to the discretionary relief noted above, section 473, subdivision (b), provides for *mandatory* relief based on an attorney affidavit of fault. The mandatory relief provision of section 473, subdivision (b), provides that the court "*shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Italics added.) "Relief [under the attorney fault provision of section 473] is mandatory when a complying affidavit is filed**,** even if the attorney's neglect was inexcusable**.**" (*Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033.) Where the applicability of the mandatory relief provision does not turn on disputed facts and presents a pure question of law, our review is de novo. (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516.)

B.    Application

In support of defendants' application to set aside default, the declaration of defendants' attorney, Rachel Opatik, stated that she completed the drafting of the demurrer to the complaint on May 9, 2011, sufficient for timely filing, and instructed her legal assistant to obtain a hearing date and have the demurrer filed in the trial court by May 10, 2011.  Ms. Opatik stated that she "mistakenly believed the legal assistant had filed" the matter and "removed the Demurrer from my personal task list."  Ms. Opatik admitted this was an error of oversight on her part, explaining that she "should have kept the Demurrer on my task list and followed up with the legal assistant [on] May 10, 2011, to ensure … the task was completed."  When the mistake was discovered on May 19, 2011, Ms. Opatik took immediate action to have the demurrer filed, and it was filed the next day.  As the trial court correctly observed in its order granting the motion to set aside default, "[t]he assistant's failure to serve, file and obtain a date for the demurrer are attributable to the attorney, because the attorney is the professional responsible for supervising the work of his or her legal assistants."  Further, the trial court found that the only prejudice to the Smiths was that they would "be litigating the case on the merits, which is to say, no prejudice at all."

The trial court properly granted the motion.  Defendants' attorney was responsible to oversee the work of her assistant in regard to the timely filing of the demurrer and, thus, her declaration of attorney fault was sufficient to require mandatory relief.  (See *Hu v. Fang* (2002) 104 Cal.App.4th 61, 64 [attorney responsible for supervising paralegal's work product, including his mistake in calendaring the order to show cause hearing; therefore, mandatory relief was required based on attorney affidavit admitting to the attorney's failure of oversight]; cf. *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 259 [assuming error of legal assistant attributable to counsel].)  Additionally, even if the matter were deemed to fall under the discretionary provision of section 473, no abuse of discretion has been shown.  Where relief is promptly sought and

9.

no prejudice would result, as was the case here, only "'very slight'" evidence is needed to permit relief, which is to be liberally granted. (*Elston*, *supra*, 38 Cal.3d at p. 233.) Defendants' motion clearly met that threshold. For these reasons, no error or abuse of discretion has been shown, and the Smiths' challenge to the order setting aside default fails.

## II.     The Trial Court Properly Sustained the Demurrers

The trial court sustained, without leave to amend, defendants' demurrer to the quiet title and injunctive relief causes of action set forth in the first amended complaint. Thereafter, the trial court sustained, without leave to amend, defendants' demurrer to the remaining causes of action for fraud, infliction of emotional distress, and unfair business practices set forth in the second amended complaint. In the present appeal, the Smiths challenge the trial court's ruling as to each of these causes of action. As will be seen, the trial court got it right because the Smiths failed to state a cause of action or present any basis for leave to amend.

### A.     Standard of Review

On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo; that is, we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. (*Holcomb v. Wells Fargo Bank*, *N.A.* (2007) 155 Cal.App.4th 490, 495.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial

court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.     First Amended Complaint

We now consider whether the trial court properly eliminated the quiet title and injunctive relief claims from the first amended complaint by sustaining demurrer to those causes of action without leave to amend.

1)     *Quiet Title*

In their quiet title cause of action, the Smiths sought to have their alleged right, title and ownership in the property found superior to that of defendants and to have the deed of trust released, reconveyed and/or voided.  At the time these allegations were made, the property had already been sold pursuant to the trustee's sale, and thus the relief sought by the Smiths' allegations (if construed generously) was to have the foreclosure set aside and the Smiths declared the rightful owners.  As the trial court observed in its order sustaining the demurrer:  "[T]his is now purely a case to recover sold, formerly mortgaged property.  *Tender must be pled*.  [Citation.]  It has not and the demurrer to this cause of action is sustained without leave to amend, as it appears that [the Smiths] cannot truthfully allege that they tendered the full amount of the indebtedness."  (Italics added.)

The trial court was correct in holding that, under the circumstances, tender of the remaining debt was a necessary element of the quiet title claim.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649; see also *Mix v. Sodd* (1981) 126 Cal.App.3d 386, 390 [in action to quiet title, court of equity will not aid a person in avoiding payment of his or her debts]; *Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477 [mortgagor cannot "quiet title without discharging his debt"].)  Similarly, where a borrower seeks to set aside a trustee's sale based on alleged irregularities, a tender of the indebtedness must be pled:  "Because the action is in equity, a defaulted borrower

11.

who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers. [Citation.] Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security. [Citations.] 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' [Citation.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112.) Other cases are to the same effect. (See, e.g., *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578-579; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117.)[6]

Moreover, the Smiths had to allege a "full tender" of the indebtedness, not merely vague "*offers* to tender" same. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526.) With respect to tender, "'it is a debtor's responsibility to make an unambiguous tender of the entire amount due .…'" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439 [strict compliance required]; see also *Karlsen v. American Sav. & Loan Assn.*, *supra*, 15 Cal.App.3d at p. 118 [an offer of performance is of no effect if the person making it is not able to perform].) In the first amended complaint, the Smiths merely alleged that they were "prepared to discuss" the matter of a tender of the

---

**6** Courts recognize certain rare exceptions to the rule requiring tender, such as when the borrower demonstrates the deed of trust is void on its face (not merely voidable) or that the underlying debt is invalid. (See *Lona v. Citibank*, *N.A.*, *supra*, 202 Cal.App.4th at p. 112; *Shuster v. BAC Home Loans Servicing*, *LP*, *supra*, 211 Cal.App.4th at pp. 512-513; see also *Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062 [listing exceptions].) The Smiths have not alleged or argued any cognizable legal basis for such an exception here.

obligation. Not only was that allegation completely insufficient, but it was made after the necessity to allege tender had been earlier raised in the prior demurrer concerning the original complaint. Moreover, the Smiths failed to offer any basis for further amendment. The trial court did not abuse its discretion in concluding that the Smiths not only failed to allege tender of the debt, but could not truthfully make such allegation. We conclude that the general demurrer to the quiet title cause of action was properly sustained without leave to amend.

### 2) Injunctive Relief

The Smiths' injunctive relief cause of action sought to prevent the trustee's sale from going forward based on the Smiths' assertion that title should be quieted in their name and that the deed of trust should not be enforced. In sustaining the general demurrer to this cause of action, the trial court noted the subject property had already been foreclosed upon and, therefore, the requested injunctive relief was now moot.

In order to establish a basis for injunctive relief, a plaintiff must allege (1) the elements of a cause of action involving a wrongful act sought to be enjoined and (2) the grounds for equitable relief. (*San Diego Unified Port Dist. v. Gallagher* (1998) 62 Cal.App.4th 501, 503.) "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.) Here, the Smiths sought the injunctive relief on the same legal grounds as they sought to quiet title. Since the underlying cause of action fails, so does the requested injunctive relief. Additionally, the trial court was correct that the trustee's sale, once permitted to go forward and completed, mooted the Smiths' effort to prevent foreclosure. At that point, the requested injunctive relief was rendered unnecessary and improper. (*MaJor v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618, 623; see also *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227.) For these reasons, we hold the trial court properly sustained the demurrer to the injunctive relief cause of action without leave to amend.

B.    Second Amended Complaint

We now turn to the remainder of the causes of action asserted by the Smiths, which were presented in their second amended complaint. The trial court sustained the demurrer to these claims without leave to amend. As will be seen, the trial court correctly concluded that the Smiths failed to state any cause of action or any basis for leave to amend.

1)    Fraud

The elements of a fraud cause of action are:  "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]"  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice."  (*Id*. at p. 645; *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 73-74.)  This means that "every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings [citation] will not ordinarily be invoked to sustain a pleading defective in any material respect.  [Citations.]"  (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 711, pp. 126-127.)  The pleading must be of sufficient particularity "'to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.'"  (*Scafidi v. Western Loan & Bldg. Co*. (1946) 72 Cal.App.2d 550, 553.)

The Smiths' fraud cause of action was based on the theory that B of A did not actually loan money to the Smiths. According to the allegations, B of A issued the loan to fictional entities that had names spelled in all capital letters (i.e., CHARLES SMITH and DEBORAH M. SMITH), as opposed to living, breathing, "real" people who spell their names with both upper case and lower case letters (i.e., Charles Smith and Deborah M. Smith). The trial court found this theory to be both factually baseless and

14.

irrational, explaining: "Spelling a natural person's name in all capital letters does not reference a new, different or artificial entity. Such a spelling still references the living person. [The Smiths] have pled no facts to suggest that they did not obtain the benefits of the loan they applied for, was funded and made payments on." We quite agree.

On demurrer, the court does not accept as true a pleading's legal contentions or unsupported conclusions. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) Here, no facts were alleged in the second amended complaint to permit a reasonable basis to conclude that a *false* representation was made—that is, no facts were stated to indicate that the Smiths did not in fact receive their loan. Spelling names in all capital letters does not, by any stretch of the imagination, suggest that the loan was not made to the Smiths or indicate an alien or artificial entity actually received the loans. To put it more bluntly, the allegations are not only unsupported conclusions, they are nonsense. In light of this glaring deficiency, along with the Smiths failure to provide any possible basis for leave to amend, we conclude that the trial court correctly sustained the demurrer without leave to amend.

Additionally, we observe that the Smiths' original complaint admitted that they actually received the loan from B of A.[7] Accordingly, we disregard the allegations to the contrary in the second amended complaint as sham pleading. "A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false." (*Cantu v. Resolution Trust Corp*. (1992) 4 Cal.App.4th 857, 877.) If a

---

**7** For example, paragraph 46 of the original complaint stated that the Smiths' mortgage was subject to a certain federal statute for several reasons, including: "Charles Smith and Deborah M. Smith executed the Deed of Trust, are individuals … [who] used the loan proceeds for personal, family, or household purposes, … the amount borrowed was, and is subject to a finance charge, and is to be repaid in 5 or more installments, and because the mortgage loan is secured by [the Smiths'] principal dwelling .…"

plaintiff does so without offering an adequate explanation for the change, "the policy against sham pleading" permits a trial court or an appellate court to "disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint." (*Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384; accord, *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1061; *Deveny v. Entropin, Inc*. (2006) 139 Cal.App.4th 408, 425-426, & fn. 3 [if a party files an amended pleading and attempts to avoid defects of original complaint by either omitting facts that rendered prior complaint defective or adding facts inconsistent with prior allegations, court may take judicial notice of prior pleadings and disregard inconsistent allegations or read into amended complaint the allegations of the superseded complaint]; *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1043, fn. 25 [same].)

Here, with no explanation for the change, the second amended complaint contradicted the original complaint by alleging that the Smiths never received the loan from B of A. Under the above authorities, we disregard these inconsistent allegations set forth in the second amended complaint. In so doing, the entire fraud claim collapses as a sham. Thus, the policy against sham pleading provides an additional basis for our conclusion that the trial court correctly sustained the demurrer to the fraud cause of action without leave to amend.

### 2) Intentional Infliction of Emotional Distress

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. (*Ibid*.) "'Liability has been found only where the conduct has been so outrageous in character, and so

16.

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' [Citation.]" (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496.) And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result. (*Potter v. Firestone Tire & Rubber Co*. (1993) 6 Cal.4th 965, 1001.) Moreover, with respect to the requirement that a plaintiff show *severe* emotional distress, the Supreme Court has expressly set the bar high: "'Severe emotional distress means "'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051, quoting *Potter v. Firestone Tire & Rubber Co*., *supra*, at p. 1004.)[8]

It is for the court to determine, in the first instance, whether a defendant's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 87; *Fowler v. Varian Associates, Inc*. (1987) 196 Cal.App.3d 34, 44.) If the court decides that reasonable persons may differ on the issue, then it is for the jury to determine whether the conduct was, in fact, outrageous. (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 534; *Alcorn v. Anbro Engineering, Inc*. (1970) 2 Cal.3d 493, 499.)

In sustaining the demurrer, the trial court found that the conduct alleged in the second amended complaint was insufficient as a matter of law to constitute extreme and outrageous conduct and, secondly, that the degree of emotional distress was not of such a severe nature that no one in a civilized society should be expected to endure it. We agree

---

[8]     The tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1051.) "'[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.'" (*Cochran v. Cochran*, *supra*, 65 Cal.App.4th at p. 496.)

with the trial court on both points. The emotional distress claim was primarily founded on the Smiths' anxiety at the prospect of losing their home once steps were taken by defendants to foreclose on the deed of trust after the Smiths stopped making mortgage payments. However, notwithstanding the Smiths' anxiety, foreclosure was simply an exercise of a contractual and lawful remedy that arose as a result of the Smiths' material default on their trust deed and, therefore, defendants' conduct was not extreme and outrageous under the circumstances. Additionally, the Smiths' natural feeling of stress or anxiety concerning that same foreclosure was not the type of emotional distress that would be considered so severe, substantial and enduring that no one in a civilized society should be expected to endure it.

The only other conduct alleged as potential support for the intentional infliction of emotional distress claim was that B of A made a number of phone calls to the Smiths. Allegedly, many phone calls were made to the Smiths' home by B of A, including occasionally more than "10 phone calls" in a single day, and in a few instances, the time of day was later than "the allowed call time established by law." The trial court carefully considered an attachment to the original complaint, referred to as exhibit No. 11, which provided a record of the subject phone calls.[9] The trial court concluded that the alleged phone calls "[did] not establish a basis for severe emotional distress." As to the phone calls, the trial court likewise found that the conduct was insufficient as a matter of law, explaining: "Exhibit 11 to the original complaint indicate[d] that the duration of the calls was extremely brief, such that the[re] were messages left or missed calls, and [the Smiths] … never made allegations that the tone of the calls was harassing, the language

---

[9]     In ruling on a demurrer, exhibits attached to the pleadings may be considered, and if allegations in the pleading conflict with the exhibits, the trial court may rely on and accept as true the contents and legal effects of the exhibits. (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83; *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

was vulgar, or threats or improper communications [were] made. [The Smiths] were free to, and apparently did, ignore the calls. Likewise, [the Smiths] have not pled facts justifying being distressed at the one late night phone call. They have not established that they were woken up by the call or that [the] content was unusual. The content of the calls must be truly egregious before these calls will support a cause of action for intentional infliction of emotional distress."

We concur with the trial court's conclusion. The phone calls were placed by B of A during the time frame after the notice of trustee's sale was recorded and served on May 19, 2010. The trustee's sale was originally set for June 9, 2010, but the Smiths were apparently able to obtain postponements and they also sought information from B of A. In the context of all that was happening, it is reasonable to assume that B of A would have had good and important reasons to attempt to communicate with the Smiths in good faith on a fairly frequent basis. In any event, no adequate allegations were presented concerning the context, timing or circumstances of the phone calls, or the words used, to suggest that the missed phone calls or messages were so egregious, so extreme and outrageous, that they exceeded all bounds of decency and went beyond what is usually tolerated in a civilized community. (*Christensen v. Superior Court*, *supra*, 54 Cal.3d at p. 903; *Cochran v. Cochran*, *supra*, 65 Cal.App.4th at p. 496.) The Smiths have failed to state a cause of action for intentional infliction of emotional distress.

On the issue of leave to amend, the trial court had sustained the demurrer to the identical cause of action in the first amended complaint with one last opportunity to cure the defects. The second amended complaint did not do so, but merely reiterated, without substantive change, the inadequate allegations. We conclude the trial court correctly sustained the demurrer to the cause of action for intentional infliction of emotional distress without leave to amend.

19.

### 3) Unfair Business Practices

The final cause of action was for alleged violation of Business and Professions Code section 17200. This section prohibits unfair competition, including unlawful, unfair, and fraudulent business acts or practices. (*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1143.) Business and Professions Code section 17200 """"borrows""" violations from other laws by making them independently actionable as unfair competitive practices. (*Cel-Tech Communications*, *Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180.) Accordingly, if a predicate unlawful or qualifying wrongful act is not alleged (i.e., the unlawful, unfair or fraudulent business act or practice), the demurrer must be sustained. (See, e.g., *Bardin v. DaimlerChrysler Corp*. (2006) 136 Cal.App.4th 1255, 1264-1275 [demurrer properly sustained where the plaintiff failed to allege facts to support asserted claims of "unfair" or "fraudulent" business act or practice]; *Walker v. Countrywide Home Loans, Inc*. (2002) 98 Cal.App.4th 1158, 1169.) Here, the second amended complaint asserted that the Smiths fraud claim constituted the sole basis for their Business and Professions Code section 17200 cause of action. Because, as previously explained above, the Smiths failed to allege facts that the alleged representation was in fact false, their fraud claim failed. Additionally, we have concluded the fraud claim was a sham. Consequently, no deception of the consumer occurred and the Smiths cannot maintain a Business and Professions Code section 17200 cause of action premised on the alleged fraud. Since the Smiths failed to offer any possible basis for leave to amend, we conclude the trial court rightly sustained the demurrer to this cause of action without leave to amend.

To summarize, we have held the trial court properly exercised its discretion in granting defendants' motion to set aside defaults, and that it correctly sustained defendants' demurrers to all of the causes of action in the first amended complaint and second amended complaint, without leave to amend.

20.

### III. Trial Court Correctly Ordered the Lis Pendens Expunged

We now briefly dispose of the appeal in case No. F066470, in which the Smiths appealed from the trial court's order granting DVP's motion to expunge the lis pendens. Under section 405.31, the trial court was required to expunge the lis pendens if it found that "the pleading on which the [lis pendens] is based does not contain a real property claim." Additionally, under section 405.32, the court shall also order the lis pendens expunged if "the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Here, the trial court determined that the Smiths had failed to plead a real property claim and, accordingly, granted the motion to expunge the lis pendens. Our review on appeal involves a demurrer-like analysis of the pleading to ascertain whether a real property claim has been adequately pled by the Smiths. (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647-648.) Since we have affirmed herein the trial court's orders sustaining demurrers to all of the Smiths' causes of action without leave to amend, it is plain that the Smiths failed to successfully plead any cause of action—including a real property claim. Therefore, we conclude the trial court correctly granted DVP's motion to expunge the lis pendens.

As to the award of attorney fees to DVP, section 405.38 provides that the trial court "shall" make an award of attorney fees and costs to the party prevailing on the motion "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." The record clearly supported the award of attorney fees to DVP, and no intelligible or adequate argument to the contrary has been presented by the Smiths in their appeal. No abuse of discretion has been shown in regard to the award of attorney fees and costs to DVP, and we affirm that portion of the trial court's order as well.

Finally, the Smiths failed to timely seek a writ of mandate, which was the only basis for obtaining appellate review of the order expunging the lis pendens. (§ 405.39; *Amalgamated Bank v. Superior Court* (2007) 149 Cal.App.4th 1003, 1016; *Howard S.*

21.

*Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 318.) This provides yet another reason to reject the Smiths' appeal of the order expunging the lis pendens—no appeal lies from such an order.

## **DISPOSITION**

The orders and judgment of the trial court are affirmed. Costs on appeal are awarded to defendants and DVP.

_____
Kane, Acting P.J.

WE CONCUR:


_____
Detjen, J.


_____
Franson, J.