[Civ. No. 36270. Second Dist., Div. Two. Feb. 8, 1971.]

ALFRED S. KARLSEN, Plaintiff and Appellant, v.
AMERICAN SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

## Counsel

Levinson, Marcus & Bratter, Burton S. Levinson, Caditz & Grant and Leonard Nasatir for Plaintiff and Appellant.

Belcher, Henzie & Biegenzahn, Frank B. Belcher, Mark Brandler, McDonald & Shafton, Fadem & Kanner, and Michael M. Berger for Defendants and Respondents.

## Opinion

**ROTH, P. J.**—Alfred S. Karlsen (Karlsen) appeals from a judgment against him rendered pursuant to a motion for judgment on the pleadings after an objection had been made and sustained to the introduction of any evidence.[1] Karlsen's complaint was against American Savings and Loan Association (American) and First Charter Financial Corporation (Charter) who were alleged to be agents of and acting for each other. It alleged three causes of action to (1) set aside a trustee's sale; (2) damages for breach of an oral agreement and (3) to establish a constructive trust in respect of certain real property.

### The Facts.[2]

On August 15, 1966, Karlsen was in default on a total indebtedness to American in the principal sum of $300,000 then due on his promissory note, and accrued interest. Charter, the named trustee in the trust deed executed by Karlsen, did, pursuant to American's instructions, properly notice a sale for February 3, 1967, of the property described in the trust deed.

The date of sale was continued on four separate occasions at Karlsen's

---

[1]"A plaintiff or defendant may *object to the introduction of any evidence* by the party whose pleading is fatally defective. The *purpose* of this objection is identical with that of a motion for judgment on the pleadings; . . ." (Italics in original.) (2 Witkin, Cal. Procedure (1954) p. 1708.)

[2]The facts herein recited are the pertinent allegations, implicitly admitted by the motion, of the three causes of action as finally stated in Karlsen's second amended complaint.

In addition, it seems to be implicit in the reporter's transcript that the trial court did, without objection, take judicial notice pursuant to section 452 of the Evidence Code, of all the facts set out in the interrogatories and requests for admissions. At the time for oral argument before this court, counsel were advised that this court took judicial notice of facts in the record at the time the motion was made. (Evid. Code, § 459.)

request. Each of the four continuances was made by separate agreement between the parties in consideration of the payment by Karlsen of interest due and accruing on the principal obligation. The last of the four continuances expired on March 10, 1967. Karlsen asserts that on March 10, 1967, respondents orally agreed to a fifth continuance "for at least an additional period of 35 days beyond . . . March 10, 1967. . . ."

During the period prior to March 10, 1967, and thereafter, means and methods were discussed by the parties for curing the default which included ". . . transactions then pending for refinancing and sale of portions of . . . the property embraced in the trust deed.

Karlsen asserts that during these negotiations he had requested American to reconvey a portion of the property (less than 12 percent of the total) for $175,000 and so permit him to consummate a proposed deal with Humble Oil and Refining Company (Humble). There is no allegation that respondents agreed to such procedure, indeed, it is conceded that respondents did not and that nothing in the trust deed required release or reconveyance of a portion of the property on any terms. There is no allegation that appellant ever consummated the deal mentioned or any deal with Humble or anyone else.

The Humble negotiations relied upon by Karlsen, as revealed in the record, are described to their best advantage in Karlsen's opening brief as follows:

"During the course of the weekly continuances, Karlsen and respondents engaged in numerous conferences and negotiations concerning the various methods by which appellant intended to cure his default. One such method involved Karlsen's sale of a portion of the property to Humble . . . for $175,000 under an option purchased by Humble. Karlsen had told American about the Humble sale as early as November 1966, and American's chief appraiser found that the value of the remaining property, net of that parcel to be sold to Humble, would be $433,000. American's appraiser recommended reconveyance of the Humble parcel by American upon a payment of $40,000. Such recommendation was not accepted by American which demanded full payment. In order to pay off American, Karlsen offered to pay to American all of the $175,000 proceeds from the Humble sale, and to refinance the remaining $125,000. However, American refused to reconvey the Humble parcel. . . .

". . . . . . . . . . . . . . . . .

"Negotiations between the parties continued after March 10, 1967. During the course thereof, Karlsen frequently informed respondents that he

would not allow his property to be sold and that he would make such arrangements as would be necessary to postpone the sale further."

The record discloses in addition that neither a sale to Humble or anyone else of a part or portion of the property was ever completed nor that any firm arrangements were ever made by Karlsen with anyone to refinance his loan on the property covered by the trust deed at any time before the motion for judgment on the pleadings was decided on September 4, 1969.

A trustee's sale was held on April 14, 1967. American purchased the property for $312,650, the amount then due.

Karlsen asserts that at the time of the sale the property was reasonably worth one million dollars. He alleges in his second amended complaint that on April 18, 1967, a few days after discovery of the sale, he did: "20. Upon discovery of said trustee's sale . . . orally and in writing [tender] to defendants the full amount outstanding on said promissory note, but defendants did thereupon reject said tender, and on or about May 10, 1967, offered to resell said property to plaintiff at a price of $514,000.00 cash, which said price represented a profit to defendant American of $202,-000.00."

Respondents admit that the sale was voidable[3] and that if an adequate tender had been made they would have been bound to accept it. We think the issue of adequate tender is decisive and will first address ourselves to that subject.

In the trial court the entire argument in chambers and in open court revolved around the question whether the first tender was adequate. The trial court decided on the facts shown by the record that there was no valid tender. Karlsen was then granted a further opportunity to amend. He filed a third amended complaint and made an offer or substitute tender referred to *infra*.

### CONTENTIONS ON APPEAL

The complaint in its three causes of action attacks the sale on the grounds that: public announcement of the various sale continuances was not properly given;[4] that it was made in violation of section 694 of the Code of Civil Procedure;[5] that by reason of the continuing negotiations

---

[3]Respondents cite *Copsey* v. *Sacramento Bank,* 133 Cal. 659 [66 P. 7, 204], for the proposition that, when a trustee purchases at his own sale or when he sells to a corporation in which he is financially interested, the trustor is allowed the right to redeem. Respondents admit that *Copsey* applies to this case.

[4]Karlsen omits answers to interrogatories asking for the defects.

[5]Section 694 of the Code of Civil Procedure provides in pertinent part: "All sales of property under execution or under power contained in any deed of [trust] here-

between the parties for payment of the amount due, Karlsen was lulled into a false sense of security; and that there was an oral promise not to sell until 35 days after March 10, 1967, coupled with an oral promise that a sale would not be made without personal notice to him of the specific date *and* without first giving him a reasonable opportunity to arrange an additional continuance. Karlsen alleges further that the sale made on April 14, 1967, was without notice or knowledge thereof by him, and that the price was so inadequate as to render the sale unfair and unconscionable.

### RIGHT TO SET ASIDE THE SALE

Respondents assert that even though the trustee sale was voidable, Karlsen cannot invoke the jurisdiction of a court of equity to set it aside when the complaint fails to show payment of the obligation for which the property was security or an offer in good faith to pay and that implicit in such offer must be the ability to pay.

■ A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust. (*Shimpones* v. *Stickney,* 219 Cal. 637, 649 [28 P.2d 673]; *Humboldt Savings Bank* v. *McCleverty,* 161 Cal. 285, 290 [119 P. 82]; *Copsey* v. *Sacramento Bank,* 133 Cal. 659, 666 [66 P. 7, 204]; *Crummer* v. *Whitehead,* 230 Cal.App.2d 264, 268 [40 Cal.Rptr. 826]; *Mack* v. *Golino,* 95 Cal.App. 2d 731, 735 [213 P.2d 760]; *Py* v. *Pleitner,* 70 Cal.App.2d 576, 581-582 [161 P.2d 393]; *Carpenter* v. *Hamilton,* 59 Cal.App.2d 149, 151 [138 P.2d 355]; *Touli* v. *Santa Cruz County Title Co.,* 20 Cal.App.2d 495, 499 [67 P.2d 404].)

In a situation comparable to the one at bench, the court in *Leonard* v. *Bank of America etc. Assn.,* 16 Cal.App.2d 341, 344 [60 P.2d 325] held: ". . . [O]ur Supreme Court, in one of its earliest decisions on the subject, said:

" '. . . It is apparent from the general tenor of the decisions that an action to set aside the sale, unaccompanied by an offer to redeem, would *not* state a cause of action which a court of equity would recognize.' (*Copsey* v. *Sacramento Bank,* 133 Cal. 659, at p. 662 [66 Pac. 7, 204, 85 Am. St.Rep. 238].)

" ' "In giving determinative force to the application of the principle of equity-jurisprudence just enunciated, the court has taken requisite cognizance of the fact that it appears without any conflict that the plaintiff was

---

after executed must be held in the county where said property or some part thereof is situated, and must be made at auction, to the highest bidder, . . . Neither the officer holding the execution nor his deputy can become a purchaser or be interested in any purchase, at such sale. . . ."

both at the time of the exercise of the power of foreclosure and is now in substantial default in the performance of the obligation of her contract and that she has in no manner shown by the evidence any ability to presently relieve herself from such defaults. *Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." ' "* (Italics added.)

■ Our analysis of the pleadings together with Karlsen's admissions and answers to the interrogatories demonstrates that the only "tender" made, if any, was in the form of Karlsen's *hope* that American would release a portion of the property he hoped Humble would buy and that if a sale had been completed and part or all of the sales price had been paid by Humble, it would be delivered to respondents and applied in reduction of his note to American, and that American or some other person would refinance the balance of the obligation. The record shows, however, that American was under no obligation to release a portion of the property, that it had refused to do so, that it had never even suggested it would and that it had not nor had anyone else agreed to refinance the property.[6]

The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. (Civ. Code, § 1495.) Simply put, if the offeror ". . . is without the money necessary to make the offer good and knows it . . ." the tender is without legal force or effect. (*Horan* v. *Harrington,* 130 Cal. 142, 143 [62 P. 400]; *Ravano* v. *Sayre,* 135 Cal.App. 60 [26 P.2d 515]; *McCarthy* v. *Grider,* 72 Cal.App. 393, 402, 405 [237 P. 751].)

Reading the record generously in Karlsen's favor, it is clear that for a period of months he was, with the knowledge of respondents, endeavoring to find ways to refinance his property; that four consecutive continuances, albeit for payment of past due interest had been granted to him to effectuate such purpose; that it is likely that respondents did await the consummation of the hoped-for sale of all or a portion of the property and a refinancing of the property in the event of a sale of only a portion thereof.

If the putative negotiations herein described were considered as a tender of payment, there would be no stability to a financial transaction such as the one at bench. Resort by a creditor to trust deed security in the manner pro-

---

[6]If there is any inconsistency between general and specific allegations, the latter are controlling. (*Shusett, Inc.* v. *Home Savings & Loan Assn.,* 231 Cal.App.2d 146, 150 [41 Cal.Rptr. 622]; *Willis* v. *Page,* 19 Cal.App.2d 508, 512 [65 P.2d 944]; 2 Witkin, Cal. Procedure (1954) p. 1193.) Appellant's specific allegations concerning the purported tender show that it was and continued to be legally ineffective.

vided by a trust deed would be nullified. A creditor would in effect have no security, except the debtor's ability and willingness to pay his obligation when due, irrespective of what defaults he had committed. In such circumstances, no lender would place money at risk.

We are satisfied that the tender alleged in paragraph 20, as amplified by the record of which the court takes judicial notice, is no tender.

After argument on the second amended complaint, the trial court indicated that paragraph 20 thereof did not, in view of the facts of record, show a tender. Karlsen requested leave to amend. The request was granted and a third amended complaint was filed. Karlsen, to cure the inadequacy of the tender heretofore discussed, included a new paragraph 23 (hereinafter referred to as substitute tender). Said paragraph is as follows:

"23. Plaintiff alleges that equity will be done, and *the rights of the defendants* to repayment of such indebtedness as may be or have been owing from plaintiff to either of them *will be fully preserved and protected, by making any relief* in respect of the trustee's sale herein referred to, *to which plaintiff may be otherwise entitled, conditional upon the payment* within a reasonable time to be fixed by the court *of the amount* of said indebtedness as such amount may be *determined by the court* upon the taking of an account; and in that sense and to that extent plaintiff is ready, willing and able to do, and hereby offers to do, equity." (Italics added.)

Karlsen then in his prayer in respect of the above states: "That the trustee's sale on April 14, 1967 and the trustee's deed upon sale issued pursuant thereto be vacated *upon the condition that plaintiff pay to defendants,* within a reasonable time to be fixed by the court, *such amount as the court determines* to be owing from plaintiff to defendants; . . ." (Italics added.)

The substitute tender is neither a tender nor a binding offer. It is a request by Karlsen predicated upon nothing except the facts herein recited that the court judicially decree that Karlsen is entitled to an option indefinite in duration to buy the property embraced in the trust deed upon such terms as the court may decree to be reasonable.

However, nowhere in the so-called offer to do equity does Karlsen agree to buy. In fact, Karlsen's attorney, in defending paragraph 23 in the trial court, confessed it to be ". . . true, it is a limited allegation, it is not a completely unqualified and unconditional statement that we will do equity. . . ." Even if it be assumed that Karlsen implicitly agrees to comply with a judgment nothing is alleged which even remotely suggests Karlsen would have the ability to comply with the "reasonable terms" to be decreed by the court if he desired to comply.

Implicit, too, in the request for a judicially decreed option is the solid probability that if Karlsen is not satisfied with the terms set out in any judgment rendered, that he would, by appeal and otherwise, exhaust every legal remedy available to him until there is a final judgment.

When that day arrives, Karlsen may walk away from his option or assuming an implicit obligation to comply (contrary to the admission of counsel quoted above) there is nothing to show that he could comply with such final judgment.

The substitute tender procedure invoked by Karlsen literally leaves respondents without a remedy. It clouds indefinitely title to the property and jeopardizes the security. Even in California, there is a probability that property may diminish in value. Knowledgeable purchasers of real property and those who accept it as security for loans know that even real estate that has a potential for appreciation must be used within a reasonable time after a purchase or a loan is made to insure the capital placed at risk. If Karlsen's theory were accepted and the property appreciated in value, he might, depending upon the terms of the decree, exercise his option to buy. If it depreciated in value respondents would have been compelled by a court of equity to hold a depreciating security and during the holding period lose accruing interest on the original loan and pay all taxes and accruing expenses.

No such intolerable situation can be countenanced and we cannot conceive how a court of law or equity would be a party to it.[7]

### Rights Arising from the Putative Oral Agreement

Appellant in a second cause of action seeks damages for breach of an alleged oral agreement to postpone the sale until April 15, to personally advise him of the proposed sale and to give him a further opportunity to arrange yet another postponement. The sale, it will be remembered, was held on April 14.[8]

---

[7]Karlsen analogizes his substitute tender to an action in rescission (*Califonia etc. Co.* v. *Schiappa-Pietra,* 151 Cal. 732 [91 P. 593]; *Kelley* v. *Owens,* 120 Cal. 502 [47 P. 369, 52 P. 797]) and asserts that since the sale was voidable all that is necessary to satisfy the requirements of a valid tender is an offer on his part to do equity. None of the grounds for rescission (Civ. Code, § 1689) are alleged. Karlsen seeks to rescind or set aside a sale made pursuant to a right in a contract, to wit: the trust deed which was the only contract executed between the parties. There is nothing in the record to remotely suggest that there is any ground to rescind the trust deed.

[8]Respondents contend that the oral agreement, assuming it was made, expired on April 14 and that even under its terms the sale was valid. In view of our disposition of appellant's entire contention regarding the oral agreement, it is not necessary for us to decide the issue.

A contract in writing may not be altered by an executory oral agreement. (Civ. Code, § 1698.)[9] "An agreement to postpone a valid sale of property beyond the date when said property may be sold under and according to the terms of the trust deed obviously is an agreement to alter the terms of the instrument . . . To hold otherwise would reduce a trust deed in any case to an unsubstantial if not worthless security." (*Stafford* v. *Clinard*, 87 Cal. App.2d 480, 481 [197 P.2d 84], hg. den.)

Four extensions had been granted to appellant in consideration of the payment of interest due. These extensions had been executed. ■ The alleged fifth extension was executory and the pleadings before us allege no consideration therefor and the record shows none was paid. The purported oral agreement is unenforceable. No damages can arise as a consequence of its alleged breach.

■ Since respondents conceded that the sale was initially voidable, appellant had a right to redeem his property. (*Copsey* v. *Sacramento Bank, supra*, 133 Cal. 659, 661.) ■ Once he failed to *effectively* exercise that right, the sale was proper in every respect. Such a sale operates as a final adjudication of appellant's and respondents' rights as borrower and lender, respectively. (*Smith* v. *Allen*, 68 Cal.2d 93, 96 [65 Cal.Rptr. 153, 436 P.2d 65].) Appellant's alleged cause of action for breach of an oral agreement is implicitly integrated with the voidable sale. However, *absent an effective and valid tender,* the sale became valid and proper. The hurdle which appellant has not been able to clear either legally or financially is that he never made a valid tender.

■ Appellant's cause of action for an accounting and a constructive trust fails for the identical reason. It is a tautology to state that if the sale was proper and valid, respondents came by the property lawfully. Such a sale puts a definitive end to appellant's efforts to hold respondents accountable as constructive trustees or in any other fashion. (*Smith* v. *Allen, supra,* 68 Cal.2d 93.)

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 8, 1971.

---

[9]Section 1698 of the Civil Code reads: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise. (Enacted 1872. As amended Code Am. 1873-74, ch. 612, p. 243, § 193.)"