Filed 3/30/26  REF Apartments v. Heredia CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| REF APARTMENTS, LLC, as successor in interest to STRATEGIC ACQUISITIONS, INC.,<br><br>       Plaintiff, Cross-Defendant and Appellant,<br><br>v.<br><br>GILBERT HEREDIA, an individual, et al.<br><br>       Defendants, Cross-Complainants and Appellants. | A171985<br><br>(Alameda County Super. Ct. No. HG19002938) |

This action involves competing claims by REF Apartments, LLC (REF) and Lori and Gilbert Heredia to quiet title to residential property in Livermore (the property).  Sitting without a jury, the trial court quieted title to the property in the names of Lori Heredia and Gilbert Heredia.  We reverse.

## BACKGROUND

### *The Foreclosure Sale and Subsequent Lawsuits*

In 2007, the Heredias entered into a residential loan agreement with Countrywide Bank, N.A. (Countrywide) for

1

$712,000.[1]  The loan documents listed an incorrect address for the property.  The notary conducting the loan document signing advised the Heredias to sign the documents as-is and then notify the bank of the error.  The Heredias signed the loan documents and immediately thereafter notified Countrywide of the incorrect address.  Countrywide updated its internal records so communications were sent to the Heredias at the correct address, but Countrywide recorded a deed of trust with the incorrect property address.

Sometime later, Gilbert[2] contacted Countrywide about a loan modification, and Countrywide advised him that he would need to default on the loan before the bank would process a request for a loan modification.  The Heredias accordingly defaulted on their loan, and Countrywide recorded a notice of default on March 6, 2009.  That same day, Countrywide assigned the loan to Bank of America, and the deed of trust to Recontrust Company (Recontrust) on behalf of Bank of America.

After receiving the notice of default, the Heredias contacted Countrywide to obtain a loan modification, but Countrywide stated that it had no record of the loan and could not process a loan modification.  Gilbert also contacted Bank of America and Recontrust to pay off the loan and/or obtain a loan modification.  Bank of America was unable to assist the Heredias because Bank

---

[1] The facts set forth herein are taken from the judgment.

[2] When we refer to Lori or Gilbert individually, we will use their first names since they share a last name.

of America could not locate the loan documents. Recontrust (on behalf of Bank of America) issued two notices of trustee's sale.

Before the trustee's sale took place, the note and the deed of trust were assigned to Deutsche Bank National Trust Co. (Deutsche Bank). Deutsche Bank executed and recorded a substitution of trustee and assignment of the deed of trust. On October 29, 2010, a new notice of trustee's sale on Deutsche Bank's behalf was recorded for a foreclosure sale on February 16, 2011. Notices for this trustee's sale were mailed to the wrong address and posted on the door of a neighbor's house (the wrong house). The Heredias did not receive notice of the trustee's sale.

Deutsche Bank bought the property at the foreclosure sale on February 16, 2011, and obtained a trustee's deed of sale (trustee's deed). The Heredias were unaware of the trustee's sale until they were sued by Deutsche Bank in an unlawful detainer action in 2011.

At some point, the Heredias obtained private financing and offered to pay the full $712,000 outstanding loan balance to Deutsche Bank, an offer that was rejected. In 2013, the Heredias filed a lis pendens.

On April 3, 2014, Deutsche Bank executed a quitclaim deed for the property in favor of Strategic Acquisition, Inc. (Strategic). On September 11, 2023, Strategic transferred the property to REF Apartments, LLC (REF) by grant deed.

Between 2011 and 2018, Deutsche Bank and Strategic filed five unlawful detainer actions against the Heredias. The trial court found, "In response to each of these actions, the Heredias

3

alleged that the defects in the trustee sale rendered the bank's title (and later, Strategic's title) invalid. The Heredias prevailed in each of these actions, either because the plaintiff dismissed the action or – in one case – after the trial court issued a decision in the Heredias' favor, finding that Strategic was not a bona fide purchaser, and that Strategic had failed to demonstrate ownership of the Property. That decision is res judicata."[3]

The Heredias remained in possession of the property at all relevant times.

On January 16, 2019, Strategic filed an action for quiet title, trespass, and ejectment, and Strategic's action was later consolidated with the Heredias' November 2021 action to quiet title. In 2024, the court allowed REF to file an amended complaint substituting itself in as plaintiff as Strategic's

---

[3] Viewing the record as a whole, we conclude the trial court here found that collateral estoppel precluded relitigation of the bona fide purchaser issue only. The court in the unlawful detainer action concluded that Strategic was not a bona fide purchaser and that Strategic had failed to show a prima facie case that it owned the property, purchased the property from a purchaser at a trustee's sale, had standing, and was entitled to possession. Reviewing the arguments made at trial in the current litigation, the record does not show that the Heredias contended that the unlawful detainer action precluded relitigation of whether Strategic held title to the property through a purchase from Deutsche Bank, who in turn purchased the property at the foreclosure sale. Instead, the Heredias argued below, as they do on appeal, that the unlawful detainer action had conclusively determined that Strategic was not a bona fide purchaser. Furthermore, the court here made factual findings that Deutsche Bank obtained title to the property at the foreclosure sale and quitclaimed its interest to Strategic.

successor-in-interest.  The 2024 trial of the parties' claims was bifurcated, with the first stage limited to the competing quiet title claims.  The court conducted a bench trial lasting less than one day.

***The Statement of Decision and Judgment***

The court concluded that REF's quiet title claim failed because REF failed to trace a clear chain of title to the property, and quieted title in favor of the Heredias.

Regarding REF's claim, the court stated, "REF obtained the Property from Strategic.  At the time it did so, REF was on notice of defects in title held by Strategic and that the Heredias claimed title, claimed that the foreclosure and trustee sale was invalid, and that the Heredias had prevailed [through voluntary dismissal or favorable judgment] in at least five unlawful detainer actions on this basis.  REF was not a bona fide purchaser for value.

"Strategic purchased the Property from Deutsche Bank.  At the time of Strategic's purchase, the Heredias had already recorded a lis pendens, and had successfully defended unlawful detainer actions brought by Deutsche Bank, alleging Deutsche Bank was not the rightful owner of the Property because of defects in the trustee's sale.  Strategic was on notice about the defects in the title held by Deutsche Bank and it was not a bona fide purchaser for value.

"Deutsche Bank was the holder of the deed of trust at the time of the trustee sale and also the purchaser of the Property at the foreclosure sale.  As such, it was responsible for and on notice

about the serious defects in the trustee sale; namely, that the notice of trustee sale was never mailed or posted to the Heredias as required by statute. Deutsche Bank was not a bona fide purchaser for value. [¶] Because REF fails to trace a clear chain of title, REF's quiet title claim fails."

The court also found that the "conclusive presumption language" in the trustee's deed did not establish REF's claim. Here, the court reasoned that the trustee's deed was voidable and there were grounds for equitable relief against Deutsche Bank, who was the foreclosing party and purchaser and who was presumptively aware of the notice defects. The court added, "Moreover, only a bona fide purchaser can enforce a voidable deed," and "REF is not a bona fide purchaser."

The court next addressed REF's arguments that the statute of limitations and laches barred the Heredias' claim to quiet title and that the Heredias could not prevail because they failed to prove a valid tender. Regarding tender, the court said, "[T]he Heredias provided uncontroverted testimony that they offered to pay the entire amount of their indebtedness both before and after the foreclosure sale, and that the banks turned away their offers. (See *Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 531–532.)" The court concluded that no statute of limitations had begun to run on the Heredias' quiet title claim because they were in undisputed possession of the property. The court rejected REF's invocation of equity and laches because it found the equities favored the Heredias and any harm from delay was attributable to both parties.

6

The court entered a judgment stating that "title shall be quieted in [Lori Heredia's and Gilbert Heredia's] favor. [Lori Heredia and Gilbert Heredia] are declared to have full legal and beneficial ownership interest in the premises . . . ." However, the court also ordered that the Heredias would be returned to the position they were in prior to the foreclosure. The court reinstated the deed of trust in effect at the time of foreclosure, and it awarded REF a lien superior to all other liens for property taxes that REF and Strategic had paid.

## DISCUSSION

REF and the Heredias both contend that they are entitled to a judgment quieting title in the property. A quiet title action finally settles and determines the parties' conflicting claims to property (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 298), and a plaintiff must establish title to the property in dispute to prevail. (Code Civ. Proc., § 761.020.) The plaintiff "may recover only upon the strength of his or her own title . . . and not upon the weakness of the defendant's title." (*Ernie v. Trinity Lutheran Church* (1959) 51 Cal.2d 702, 706.) "The cases . . . more accurately state that plaintiff must prove a title in himself superior to that of defendant." (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 918.) "[A] plaintiff who relies solely on a paper or record title must trace his chain of title back to the government or to a predecessor shown to have been in possession." (*San Diego Improvement Co. v. Brodie* (1932) 215 Cal. 97, 100.)

7

The crux of REF's complaint to quiet title is that it acquired title to the property (through Strategic) from Deutsche Bank, which acquired title through the trustee's deed after the foreclosure sale. The crux of the Heredias' defense and of their own claim to quiet title is that they should be deemed to hold superior title because the foreclosure sale and trustee's deed were void or voidable in equity given that the trustee's notice of sale was not properly posted or served. Because the foreclosure sale lies at the center of this dispute, we briefly review the law governing nonjudicial foreclosure.

### Nonjudicial Foreclosure

"A deed of trust to real property acting as security for a loan typically has three parties: the trustor (borrower), the beneficiary (lender), and the trustee." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 926.) If the trustor defaults on the loan secured by a deed of trust, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. (*Ibid.*) To proceed with a nonjudicial foreclosure sale, a beneficiary or trustee must first record a notice of default. (Civ. Code[4], § 2924, subd. (a)(1).) If the default is curable, the notice must specify the sums that are required to cure the default. (§§ 2924, subd. (a)(1)(D), 2924c.) After the notice of default is given, at least three months must elapse before notice of a trustee's sale may be given. (§ 2924, subd. (a)(1)(D),(2)–(3).) The notice of trustee's sale must be given at least 20 days before the

---

[4] All further statutory references are to the Civil Code unless otherwise specified.

8

sale, and this notice must be recorded, published, posted on the property, and mailed as required by statute. (§§ 2924b, 2924f, subd. (b).)

Where a trustee's deed to the buyer at a foreclosure sale recites that all procedural requirements for the notices of default and sale have been satisfied, there is a statutory rebuttable presumption that such notice requirements have been fulfilled; there is also a common law presumption in favor of the regularity of the sale. (*Melendrez v. D & I Investment, Inc.*, (2005) 127 Cal.App.4th 1238, 1255; § 2924, subd. (c).) In addition, there is a conclusive statutory presumption created in favor of a bona fide purchaser who receives a trustee's deed that contains a recital that the trustee has fulfilled its statutory notice requirements. (§ 2924, subd. (c).) The party challenging the trustee's sale has the burden to prove prejudicial irregularity sufficient to overcome the presumption of the sale's regularity. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103, 105.)

Furthermore, where there are notice defects related to the foreclosure sale, the trustee's deed after sale may be void or voidable. (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358–1360.) The factors that determine whether the sale under a deed of trust with notice defects is void or voidable are the existence and effect of conclusive presumption language in the trustee's deed with respect to the foreclosure sale's regularity and the status of the buyer. (*Homestead Savings v. Darmiento* (1991) 230 Cal.App.3d 424, 436.) "The sale is void where there is a notice defect and no conclusive presumption [language].

9

[Citation.] A sale is void where there is a notice defect and conclusive presumption language and recitals in the deed which establish on its face the irregularity of the sale. This could occur where there were postponements of a sale which show that proper notice could not have been given. [Citation.] A sale is voidable where there is a notice defect and conclusive presumption language and there is no bona fide purchaser for value. [Citation.] Where the evidence establishes that the trustee conveyed title to a bona fide purchaser and the trustee's deed contains the language specified in section 2924, the sale is not voidable. [Citation.] Any failure to comply with the procedural requirements does not affect the validity of a sale to a bona fide purchaser for value." (*Homestead Savings*, at p. 436.)

Here, the trustee's deed is voidable because it is undisputed that Deutsche Bank, Strategic, and REF were not bona fide purchasers and the deed contains a recital that the trustee has fulfilled its statutory notice obligations. (*Little v. CFS Service Corp.*, *supra*, 188 Cal.App.3d at pp. 1358–1360.)

### *Analysis*

REF argues that the judgment must be reversed because: (1) the Heredias' claim to title depended on their ability to obtain affirmative relief in equity setting aside the voidable foreclosure and that claim was time-barred; (2) the Heredias were required to, but failed to, establish a valid and viable tender; and (3) the judgment reinstating the deed of trust and providing nothing to REF except a lien for property taxes exceeds the bounds of equity

given that Deutsche Bank and Recontrust were indispensable, but absent, parties.

We first turn to REF's indispensable party argument because we are troubled by the remedy crafted by the trial court. Citing *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662 (*Washington Mutual*), REF urges us to reverse the judgment based on alleged inequities that were caused by the absence of Deutsche Bank (the lender) and Recontrust (the trustee) from the lawsuit at the time of trial.

REF's contention that Deutsche Bank and Recontrust were indispensable parties has merit. In *Washington Mutual*, California Reconveyance Company (CRC), as trustee of a deed of trust, foreclosed on Blechman's property and sold it to Gladmac. (*Washington Mutual, supra,* 157 Cal.App.4th at p. 664.) Blechman sued Washington Mutual, the deed of trust's beneficiary, CRC, and Gladmac to set aside the sale and quiet title, Gladmac defaulted, and Blechman dismissed Washington Mutual and CRC and obtained a default judgment against Gladmac declaring the foreclosure sale "null and void." (*Id.* at p. 666.) Washington Mutual and CRC then filed a new action collaterally attacking the default judgment and seeking a declaration that the foreclosure sale was valid, and Gladmac cross-complained for a declaration that it had clear title. (*Ibid.*)

The appellate court affirmed the trial court's judgment allowing the collateral attack on the default judgment, determining that the foreclosure sale was valid, and declaring Gladmac the owner of the property. (*Washington Mutual, supra,*

11

157 Cal.App.4th at pp. 666–667, 669, 671.) "[I]t [took] little analysis or discussion to conclude that [Washington Mutual] and CRC were indispensable parties" to the first action who could collaterally attack the judgment. (*Id.* at p. 668.) Essentially conceding this, Blechman nonetheless argued it was " 'too late for Gladmac to complain,' " as it was bound by the default judgment. (*Ibid.*) Disagreeing, the *Washington Mutual* court noted that a "consequence of failing to join (or dismissing) an indispensable party is to invite an inconsistent judgment." (*Ibid.*) The judgment did not bind Washington Mutual and CRC, who were free to seek a contrary judgment affirming the foreclosure sale, rendering the default judgment secured in their absence "essentially illusory." (*Ibid.*) The court stated, "It was never legally or practically possible for Blechman to obtain nullification of the trustee's sale in the absence of [Washington Mutual] and CRC." (*Ibid.*) And the court found that Blechman's suggestion that the default judgment should nonetheless be allowed to stand as to Gladmac "ludicrous." (*Ibid.*)

Here, the trial court's remedy is troubling because it effectively set aside the foreclosure sale and reinstated the deed of trust, a remedy that is "essentially illusory" in the absence of the lender and trustee. (*Washington Mutual*, *supra*, 157 Cal.App.4th at p. 668.) A court has broad authority to grant equitable relief in a quiet title action (Code Civ. Proc., § 760.040, subd. (b); *Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1246), but that authority is not boundless. A court notably cannot bind a party to a " ' "a judgment in an action in which he

12

was not joined." ' " (*Washington Mutual*, at p. 667.) The court's remedy also provided no relief to REF except for a lien for property taxes, though REF paid Deutsche Bank for the property.

On the other hand, we acknowledge this case's convoluted history created a procedural quandary. Both parties dismissed Deutsche Bank below, and Deutsche Bank disclaimed an interest in the property, apparently when it believed that the court would not allow the foreclosure sale to be challenged in the litigation. We also acknowledge that failure to join indispensable parties does not render a judgment void as to parties before the court (*Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 305), although that judgment may be collaterally attacked by indispensable parties. (*Washington Mutual*, *supra,* 157 Cal.App.4th at p. 668.) We nonetheless cannot see how the trial court's remedy could be effectually implemented, and REF's argument that the remedy is inequitable is not without force. Ultimately, however, we need not decide how this issue should be resolved because we agree with REF's tender argument, to which we now turn.

In this case, the Heredias sought to counter the evidence of title from the REF-Strategic deed, the Deutsche Bank-Strategic quitclaim deed, and the trustee's deed containing language stating that all notice requirements for the notices of default and sale were satisfied, by showing the trustee's deed should be set aside for lack of proper notice. (*Lona v. Citibank, N.A.*, *supra*, 202 Cal.App.4th at p. 103 ["Generally, a challenge to the validity

13

of a trustee's sale is an attempt to have the sale set aside and to have the title restored"].)

When a party invokes equity to set aside a voidable trustee's sale, he or she must allege and prove tender of the debt for which the real property served as security, whether the purchaser at the foreclosure sale is the lender or a third party. (*Py v. Pleitner* (1945) 70 Cal.App.2d 576, 582 ["The rule in this state is settled that a tender of the indebtedness is a prerequisite to a judgment canceling a sale under a deed of trust"]; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 (*Karlsen*); *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 59, 86–87; *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 568 [applying tender rule to quiet title action based on wrongful foreclosure]; see also *American Trust Co. v. De Albergaria* (1932) 123 Cal.App. 76, 78.)[5]

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." (*Karlsen, supra*, 15 Cal.App.3d at p. 117.) " ' " '*Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may*

---

[5] There are some exceptions to the tender rule, including that tender is not required when the foreclosure transaction is void. (*Sciarratta v. U.S. Bank National Assn., supra*, 247 Cal.App.4th at p. 568.) The void transaction exception does not apply here, and we agree with REF that the Heredias have not argued that any other exceptions to the tender rule apply.

*be subserved through its intervention.*' " ' " (*Id.* at p. 118.) "[O]ne who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878.)

*Karlsen* affirmed the trial court's grant of judgment on the pleadings in an action to set aside a trustee's sale because the plaintiff failed to allege a valid and viable tender. (*Karlsen*, *supra*, 15 Cal.App.3d at pp. 114, 121.) There, the plaintiff's property was sold at a foreclosure sale pursuant to a deed of trust after he defaulted on his loan payments. (*Id.* at pp. 114, 116.) Prior to the sale, the plaintiff and the lender had discussed refinancing and reconveyance of part of the property secured by the deed of trust to the plaintiff for sale to a third party as a means to cure the plaintiff's default. (*Id.* at p. 115.) However, the lender never agreed to refinancing or to the reconveyance and resale, and the plaintiff did not allege that he had consummated any deal for sale of the property. (*Id.* at p. 116.) In his original complaint, the plaintiff alleged that he offered to pay his full indebtedness days after learning about the foreclosure sale. (*Ibid.*)

*Karlsen* held that the plaintiff did not set forth a valid and viable tender offer because there were no facts alleged to show that the plaintiff had the ability to pay. (*Karlsen*, *supra*, 15 Cal.App.3d at p. 118.) *Karlsen* analogized the situation to *Leonard v. Bank of America etc. Assn.* (1936) 16 Cal.App.2d 341, 343–346, wherein the plaintiff sought to set aside a foreclosure

15

sale on various grounds, including inadequate notice, but the court rendered judgment for the defendants because the plaintiff failed to prove an offer to pay her debt and her ability to pay should the court set aside the sale. (*Karlsen*, at p. 117.) *Karlsen* similarly found that the tender before it was insufficient where it consisted of the plaintiff borrower's hope that the defendant lender would release part of the property covered by the deed of trust, that an identified prospective purchaser would buy this part of the property, and that certain entities would agree to refinance the remaining debt that would not be satisfied from the sale. (*Id.* at pp. 118–119.)

In *Napue v. Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 612–613, 620, the plaintiffs' house was sold at foreclosure to defendant Gor-Mey West, Inc. in January 1981, and the plaintiffs filed an action to quiet title and cancel or set aside the foreclosure sale. The trial court concluded that the three-month reinstatement period mandated by section 2924 was not properly provided to the plaintiffs, and, in April 1982, the court entered a judgment quieting title in favor of the plaintiffs conditioned on certain payments to the defendants. (*Id.* at p. 613.) The defendants appealed. (*Ibid.*)

The appellate court reversed the judgment, holding that the plaintiffs had received the required period of reinstatement, notwithstanding their bankruptcy filings. (*Napue v. Gor-Mey West, Inc.*, *supra*, 175 Cal.App.3d at pp. 615–620.) For guidance on remand with respect to tender, the appellate court stated, " 'A valid and viable tender of payment of the indebtedness owing is

essential to an action to cancel a voidable sale under a deed of trust.' [Citation.] A tender of payment is of no effect if the offeror does not have the present ability to make the tender good." (*Id.* at p. 621.) Thus, while the record showed that the trial court had found that plaintiffs made a sufficient offer to tender whatever amount the court found was due and owing to cure their default, the appellate court directed the trial court on remand "to consider [plaintiffs'] present ability to make their tender good taking into account the additional advances made by defendants during the pendency of this appeal and taking into account [plaintiffs'] apparent inability to obtain financing." (*Id.* at pp. 621–622.)

Here, the Heredias do not dispute that they were required to establish a valid and viable tender for a voidable foreclosure transaction, and we conclude that they failed to do so because no evidence was introduced regarding their present ability to tender. The trial court found that the Heredias offered to pay their indebtedness at some point before the foreclosure sale, but the banks turned them away. This finding may have assisted the Heredias in establishing tender had they pursued a wrongful foreclosure theory premised on the bank's failure to accept a tender to reinstate their loan. (*Turner v. Seterus, Inc.*, *supra*, 27 Cal.App.5th at pp. 528–533 [tender of amount required to cure trustor's default, not full amount of mortgage debt, is required to plead a claim based on failure to reinstate].) The Heredias, however, pleaded and pursued a wrongful foreclosure claim premised on inadequate notice of the trustee's sale, not on the bank's alleged wrongful refusal to reinstate their loan.

17

With respect to post-foreclosure tender, construing the evidence in the light most favorable to the judgment (*Kao v. Joy Holiday* (2020) 58 Cal.App.5th 199, 206), the Heredias' testimony supports the trial court's conclusion that they contacted Deutsche Bank and offered to pay a mortgage indebtedness of $712,000 in 2013. The evidence also shows that the Heredias were able to pay the mortgage debt *at that time* because Gilbert had lined up private financing from a man whom Gilbert referred to at trial as a friend in past tense. But the suits at issue here began in 2019 and 2021, with trial in 2024. The Heredias did not mention tender in their verified quiet title complaint, and they did not introduce any evidence regarding the current state of their finances or their ability to borrow or liquidate assets. (See *In re Worcester* (9th Cir. 1987) 811 F.2d 1224, 1230–1231 [tender sufficient under California law where debtor offered to repay her indebtedness and asked bankruptcy court to sell the property, which the record showed was "worth many times the amount owed," to do so].) There was accordingly no evidence showing the Heredias' present ability to make their tender good, such that the trial court could conclude that the Heredias had established that equity would not be employed for an idle act. (*Karlsen*, *supra*, 15 Cal.App.3d at p. 118.) The lack of evidence of a viable tender is fatal to the Heredias' ability to defeat REF's evidence of title and to their own quiet title claim.

## DISPOSITION

The judgment is reversed. On remand, the trial court is instructed to enter a judgment quieting title in the property in REF's name.


                                                    BROWN, P. J.


WE CONCUR:

STREETER, J.
MOORMAN, J.*


*REF Apartments, LLC v. Heredia*  (A171985)

---

* Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.